Rebecca **WARWICK**, Plaintiff–Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** Defendant–Appellee.

No. 93CA1241.

Colorado Court of Appeals, Div. III.

Nov. 17, 1994.

Shakeshaft & Chernushin, P.C., Kenneth J. Shakeshaft, Colorado Springs, for plaintiff-appellant.

Retherford, Mullen, Johnson & Bruce, Neil C. Bruce, Colorado Springs, for defendant-appellee.

Opinion by Judge JONES.

Plaintiff, Rebecca Warwick, initiated this action against defendant, State Farm Mutual Automobile Insurance Company, asserting various causes of action, including claims brought pursuant to § 10–4–708, C.R.S. (1994 Cum.Supp.), for breach of contract and willful and wanton failure to pay personal injury protection benefits in accordance with § 10–4–701, et seq., C.R.S. (1987 Repl.Vol. 4A) (the No–Fault Act). From a judgment of dismissal of these claims, Warwick appeals, and we affirm.

Warwick contends that the trial court erred in dismissing these claims based on its conclusion that such claims were required to be arbitrated under the terms of § 10–4–708 in effect at the time plaintiff's policy was issued. Warwick asserts that the 1991 amendments to the No–Fault Act, modifying the requirement that such claims be arbitrated, are applicable to her action because, she argues, the acts "complained of" occurred after the effective date of the amendments. We disagree.

The pertinent facts in this case are not in dispute. Warwick was injured in an automobile accident on May 12, 1991. At the time of her accident, she was insured with an automobile policy issued by State Farm which provided personal injury protection (PIP) benefits as required by the No–Fault Act. Her automobile insurance policy was issued prior to July 1, 1991. She submitted claims to State Farm for her health care expenses, which it allegedly failed to pay in a timely manner or improperly denied after July 1, 1991.

■■■ The No–Fault Act governs the rights and liabilities for personal injuries resulting from automobile accidents. PIP coverage is required by the No–Fault Act and PIP benefits are required to be paid regardless of fault. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15 (Colo.1991).

Prior to amendment of the No–Fault Act in 1991, Colo.Sess.Laws 1989, ch. 82, § 10–4–708(1.5) at 458–459 provided, in pertinent part, that any "action for breach of contract brought pursuant to subsection (1) of this section *shall* proceed to binding arbitration. . . ." (emphasis added) That statutory section now provides:

> If a dispute arises under subsection (1) of this section, the insured . . . and the insurer may agree to resolve the dispute through binding arbitration. . . . If there is no agreement concerning binding arbitration, the insured . . . may bring an action in contract in the appropriate court to resolve the dispute.

Section 10–4–708(1.5), C.R.S. (1994 Cum. Supp.).

Thus, if the provisions of § 10–4–708 in effect prior to the 1991 amendments are applicable to Warwick, she was required to resolve her claims under the No–Fault Act through mandatory arbitration. Alternatively, if the 1991 amendments govern her action, she is entitled to elect resolution through binding arbitration, if the parties can so agree, or through a contract action in court.

The enacting provision of the 1991 amendments states:

> This act shall take effect July 1, 1991, and shall apply to services provided under and disputes related to policies issued on or after July 1, 1991, complying with the provisions of the [No–Fault Act], and to acts occurring on or after said date.

Colo.Sess.Laws 1991, ch. 203, § 6 at 1191.

Warwick contends that this provision should be interpreted so that the 1991 amendments are applicable to insurance policies issued after July 1, 1991, or to acts occurring on or after that date, regardless of when the policy was issued. Relying on the phrase "and to acts occurring on or after [July 1, 1991]" at the end of the enacting provision, she contends she is entitled to elect to bring her action in court because the acts she complains of, failure to pay or improper denial, occurred after July 1, 1991, even though her policy was issued prior to such date. We disagree.

■■■ In questions of statutory construction, the most critical guide to this court is

the intent of the General Assembly in enacting the statute. When, as here, the words of a statute may be interpreted in more than one way within the context of the statutory scheme, the history of the statute may be useful as a guide to legislative intent. *Bynum v. Kautzky*, 784 P.2d 735 (Colo.1989).

The legislative history of the statute here reveals that the General Assembly intended the amendments to apply only to automobile insurance policies issued after July 1, 1991. As originally proposed, the enacting provision stated:

> This act shall take effect July 1, 1991, and shall apply to services provided under and disputes related to policies complying with the provisions of [the No–Fault Act] and to acts occurring on or after said date.

Hearings on H.B. 1133 before the Subcommittee of the House Affairs Committee, 58th General Assembly, First Regular Session (January 24, 1991).

During deliberations on the bill, legislators stated they did not intend to apply "new rules to old contracts," and noted that the language of the enacting provision as introduced might erroneously be so interpreted. Hearings on H.B. 1133 before the Subcommittee of the House Affairs Committee, 58th General Assembly, First Regular Session (February 5, 1991). *See Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6 (Colo.1993) (legislation applied prospectively when it operates on transactions that occur after its effective date).

■ To clarify that the amendments to the No–Fault Act proposed by the bill applied only to insurance policies issued or renewed on or after July 1, 1991, the General Assembly amended the enacting provision to include, after the word "policies," the phrase "issued on or after July 1, 1991." Hearings on H.B. 1133 before the Subcommittee of the House Affairs Committee, 58th General Assembly, First Regular Session (February 5, 1991). This modification was adopted by the General Assembly. Colo.Sess.Laws 1991, ch. 203, § 6 at 1191.

■ Hence, the legislative history reveals that the General Assembly intended the amendments to affect only insurance policies issued after July 1, 1991. This interpretation is consistent with the rule of statutory construction that legislation is presumed to have a prospective effect unless a contrary intent is expressed by the General Assembly. *See* § 2–4–202, C.R.S. (1980 Repl. Vol. 1B); *People v. Munoz*, 857 P.2d 546 (Colo.App.1993).

We also are not persuaded by Warwick's contention that the amendments can be applied retroactively because the 1991 amendments to the No–Fault Act were simply procedural in nature. The 1991 amendments made numerous substantive changes in the responsibilities of, and relationships between, health care providers, insurance companies, and insureds in connection with No–Fault PIP coverage.

Warwick next contends that the final phrase of the enacting provision, *i.e.*, "to acts occurring on or after said date," is superfluous if the amendments are interpreted to be applicable only to policies issued on or after July 1, 1991. She asserts, even if the first clause in this provision removes jurisdiction of the trial court to consider her lawsuit, that to give the final clause meaning it must be construed as extending application of the statute to acts occurring on or after July 1, 1991, regardless of when the insurance policy was issued. For several reasons, we disagree.

■ Such an interpretation, is not reasonable because it would require that a statute be regarded as both prospective and retrospective in its application. Absent a clear statement from the General Assembly expressing an intention that the statute be read in such a logically contradictory fashion, we will not interpret it in that way. *See Ficarra v. Department of Regulatory Agencies, supra* (legislation presumed to have a prospective effect unless an intent to the contrary is expressed).

Secondly, the General Assembly began the final phrase of the enacting provision by resort to the conjunctive, using the word "and." Thus, while susceptible to different interpretations, the plain and ordinary meaning of the phrase can only be that the insurance policy must have been issued, *and* the acts complained of must have occurred, on or

after July 1, 1991, for the dispute, under § 10–4–708, to be controlled by the 1991 amendments. Logically, if the General Assembly had intended to refer, in that final phrase, to "acts" having to do with policies issued prior to July 1, 1991, it would have begun the final phrase with the word "or."

Additionally, a careful reading of the entire statute and consideration of the legislative history reveal that the General Assembly did not intend to give back a remedy in the final phrase of the statute that it had taken away in the first part of the statute. To the contrary, we agree with State Farm that the final clause of the statute was intended by the General Assembly to refer, not to services and acts by those in the insurer/insured relationship, but "to acts" of third parties, such as service providers and medical and other suppliers.

Thus, Warwick may not rely on the final phrase of the statute in her attempt to justify her contract action. That portion of the statute was not intended to refer to her efforts to resolve her claims against State Farm within the context of the insurer/insured relationship.

Finally, we note that when Warwick acquired her insurance policy, the provisions of § 10–4–708 then in effect required her to submit disputes to binding arbitration. Thus, our interpretation of the enacting provision of the 1991 amendments does not affect the rights or expectations she had when she entered into her insurance contract.

Hence, we conclude that the trial court correctly construed the intent of the General Assembly when the court applied the statute here prospectively as to Warwick and determined that the 1991 amendments to the No–Fault Act are effective only as to insurance policies issued on or after July 1, 1991.

The judgment is affirmed.

STERNBERG, C.J., and DAVIDSON, J., concur.