Ronald KLEIN, Plaintiff–Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant–Appellee.

No. 95CA1544.

Colorado Court of Appeals,
Div. II.

April 3, 1997.

As Modified on Denial of Rehearing
May 29, 1997.

Certiorari Denied Dec. 15, 1997.

Thomas M. Haskins, P.C., Gordon J. Williams, Colorado Springs, for Plaintiff–Appellant.

Retherford, Mullen, Johnson & Bruce, LLC, Neil C. Bruce, Colorado Springs, for Defendant–Appellee.

Opinion by Judge MARQUEZ.

In this action premised on alleged violations of the Colorado Auto Accident Reparations Act (No Fault Act) as in effect at the pertinent times, plaintiff, Ronald Klein, appeals a judgment entered on a jury verdict in favor of defendant, State Farm Mutual Automobile Insurance Company. We affirm.

On December 17, 1989, plaintiff was injured in an automobile accident and, approximately twelve days thereafter, sought treatment for those injuries. At that time, plaintiff was insured under a liability policy issued by defendant that provided personal injury protection/no-fault insurance coverage. For the treatments provided, plaintiff's health care providers submitted statements to defendant for payment. Defendant paid over $21,000 under the medical portion of the policy and over $8,000 for lost wages, but denied payment of certain other bills.

Thereafter, plaintiff commenced this action alleging breach of contract by failure to pay insurance policy proceeds, bad faith breach of an insurance contract, and the willful and wanton failure to make prompt payment of benefits. A central allegation of plaintiff's complaint was that defendant had violated the No Fault Act by not paying or denying the claims within the thirty-day period required by § 10–4–708(1), C.R.S. (1994 Repl. Vol. 4A). Prior to trial, defendant paid additional benefits to plaintiff.

The jury returned a verdict for defendant, and this appeal followed.

## I.

Plaintiff first contends that, because the No Fault Act mandated binding arbitration, the trial court lacked jurisdiction to hear claims arising under that statute. We disagree.

Plaintiff raises this issue for the first time on appeal. However, because he questions jurisdiction, we address it at this time. *See In re Marriage of Finer*, 893 P.2d 1381 (Colo.App.1995). We conclude that, even under the version of the No Fault Act requiring arbitration, the court does have jurisdiction if the right to arbitration is not invoked.

In 1989, the No Fault Act was amended to provide in pertinent part that any "action for breach of contract brought pursuant to subsection (1) of this section *shall* proceed to binding arbitration...." Colo. Sess. Laws 1989, ch. 82, § 10–4–708(1.5) at 458–459 (emphasis added). That statutory section was amended in 1991, Colo. Sess. Laws 1991, ch. 203, § 1, at 1185, and now provides:

> If a dispute arises under subsection (1) of this section, the insured ... and the insurer *may* agree to resolve the dispute through binding arbitration.... If there is no agreement concerning binding arbitration, the insured ... may bring an action in contract in the appropriate court to resolve the dispute.

Section 10–4–708(1.5), C.R.S. (1994 Repl.Vol. 4A) (emphasis added).

The effective date of the 1989 amendment was July 1, 1989. Colo. Sess. Laws 1989, ch. 82, § 6, at 461. *See McClendon v. Regional Transportation District*, 878 P.2d 123 (Colo. App.1994). Thus, because plaintiff's accident occurred on December 17, 1989, our consideration is limited to the 1989 version of § 10–4–708(1.5).

A valid and enforceable arbitration provision divests the courts of jurisdiction over all disputes that are to be arbitrated. *Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928 (Colo.1990); *Eychner v. Van Vleet*, 870 P.2d 486 (Colo.App.1993). The general rule is that the party asserting a claim has the burden to initiate arbitration. *Mountain Plains Constructors, Inc. v. Torrez, supra.*

The provisions of the No Fault Act are incorporated into insurance policies written in Colorado. The No Fault Act provision that is controlling here dictates that disputes under the No Fault Act shall proceed to binding arbitration pursuant to the Uniform Arbitration Act. *State Farm Mutual Automobile Insurance Co. v. Broadnax*, 827 P.2d 531 (Colo.1992) (rejecting insurance company's contention that the 1989 version of § 10–4–708(1.5) impermissibly limits district court jurisdiction).

However, a party may waive its right to arbitration by taking actions that are inconsistent with an arbitration provision. *Mountain Plains Constructors, Inc. v. Torrez, supra.* A defendant's right to arbitrate will be deemed waived if he or she has acted inconsistently with that right and prejudice will accrue to the other parties. *Norden v. E.F. Hutton & Co.*, 739 P.2d 914 (Colo.App. 1987).

In *Warwick v. State Farm Mutual Automobile Insurance Co.*, 886 P.2d 323 (Colo. App.1994), a motorist injured in an accident which occurred prior to the 1991 amendments brought an action against her insurer. A division of this court held that the provisions of the statute, then in effect, required plaintiff to submit disputes to binding arbitration and affirmed a ruling of the trial court dismissing these claims because plaintiff failed to arbitrate them.

Defendant contends that, because plaintiff did not raise the issue in the trial court, his right to arbitration was waived. We agree that, under the circumstances here, the right to arbitration has been waived.

Defendant asserts that plaintiff did not seek arbitration at any time after *Warwick* was announced or prior to the filing of this appeal. Defendant also notes that State Farm and its counsel were also defendant and counsel in *Warwick*, and plaintiff's trial counsel was counsel for the plaintiff in *Warwick*. Plaintiff does not dispute these assertions.

Because statutory rights may also be waived, we conclude that any rights plaintiff had to arbitration under the 1989 version of

§ 10–4–708(1.5) could also be waived. *See First Interstate Bank of Denver, N.A. v. Central Bank & Trust Co.,* 937 P.2d 855 (Colo.App.1996); *People v. Bergen,* 883 P.2d 532 (Colo.App.1994) (statutory rights may be waived so long as waiver is voluntary).

■ Here, plaintiff filed his complaint in April 1992. In November 1994, *Warwick v. State Farm Mutual Automobile Insurance Co., supra,* was announced. Trial in the present case commenced in May 1995.

Thus, plaintiff acted inconsistently with his right to arbitrate by pursuing discovery and proceeding all the way through trial after the decision in *Warwick* put him on notice that he was to submit to binding arbitration. *See Bashor v. Bache Halsey Stuart Shields, Inc.,* 773 P.2d 578 (Colo.App.1988) (advantage defendants gained by judicial discovery not available to them in arbitration proceedings constitutes sufficient prejudice to plaintiff to infer waiver of defendants' right to require arbitration); *Norden v. E.F. Hutton & Co., supra* (defendants acted inconsistently with their right to arbitrate by pursuing discovery and confirming in open court their intention to go to trial after they knew they had a legally enforceable arbitration right).

We conclude, as a matter of law, that the actions of the plaintiff were inconsistent with the right to arbitrate and constituted a waiver of the mandatory arbitration requirement. *See Cordillera Corp. v. Heard,* 200 Colo. 72, 612 P.2d 92 (1980); *Red Sky Homeowners Ass'n v. Heritage Co.,* 701 P.2d 603 (Colo. App.1984). Further, because plaintiff failed to invoke his statutory right to arbitration, the court had jurisdiction to hear his claims.

## II.

■ Plaintiff next contends that the trial court erred in denying his motion for judgment notwithstanding the verdict. Plaintiff specifically contends that the defendant clearly failed to pay, deny, or request further proof as to his claims within thirty days of the receipt of reasonable proof of expenses and that, thus, the jury's verdict is unsupported by the record. We disagree.

A motion for judgment notwithstanding the verdict:

may be entered only if a reasonable person could not reach the same conclusion as the jury, when viewing the evidence in the light most favorable to the party against whom the motion is directed.... Every reasonable inference that may be drawn from the evidence must be drawn in favor of the non-moving party.

*Boulder Valley School District R–2 v. Price,* 805 P.2d 1085, 1088 (Colo.1991).

A verdict will not be reversed if a reading of the record reveals any basis to support it. *Combined Communications Corp., Inc. v. Public Service Co.,* 865 P.2d 893 (Colo.App. 1993). Viewing the evidence in the light most favorable to defendant, we conclude that the jury's verdict was supported by the evidence presented at trial.

At the time pertinent here, Colo. Sess. Laws 1989, ch. 82, § 10–4–708(1), provided, in relevant part:

Benefits for any period are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred during that period; except that an insurer may accumulate claims for periods not exceeding one month, and benefits are not overdue if paid within fifteen days after the period of accumulation. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within thirty days after such proof is received by the insurer. Any part or all of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within thirty days after such proof is received by the insurer. In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover the same.

During the relevant period, insurers were required under the act to pay all reasonable and necessary expenses for a variety of treatments for bodily injury arising out of the use or operation of a motor vehicle. *See* Colo. Sess. Laws 1984, ch. 303, § 10–4–706(1)(b) at 1071.

Plaintiff initially argues that, under § 10–4–708(1) insurers are required either to pay

or deny claims within thirty days of receipt of reasonable proof of the fact and amount of the expenses incurred. Thus, he asserts that within thirty days after receiving reasonable proof, "an insurer must (1) determine that the injuries were not related to the accident, that the treatment was not necessary, or that the treatment or expense was not reasonable, and deny the claim or request further proof; or (2) pay the bills submitted by the insured." In plaintiff's view, a health care provider's bill with an accompanying explanation alone establishes reasonable proof. We reject this reading of the statute.

When interpreting a statute, our primary goal is to give effect to the intent of the General Assembly. To determine this intent, we construe statutory terms in accordance with their plain and ordinary meaning. When, as here, the statutory language is clear, we need not employ interpretive rules of statutory construction. *Farmers Insurance Exchange v. Dotson,* 913 P.2d 27 (Colo. 1996).

The statute provides that benefits are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred. Consequently, a prerequisite to payment necessarily requires the receipt of "reasonable proof" as to expenses. If reasonable proof of the fact and amount of expenses incurred during that period is in question, an ancillary question is whether the thirty-day period has begun to run.

According to plaintiff, nothing in the statute required him to submit proof that the expenses were reasonable and necessary in order to commence the thirty-day period. Rather, he contends that he need only have submitted reasonable proof of the fact and amount of expenses.

■ In our view, the submission of bills in a particular case, based on the information available to the insurer, may be sufficient proof that treatment was reasonable and necessary. However, in other circumstances, it may not. The statute does not require that the insurer decide whether to pay for any service within thirty days simply because proof of treatment and the amount of expenses has been submitted. By the plain terms of the statute, the proof submitted must be reasonable. Further, the proof submitted must demonstrate that the expenses incurred were reasonable and necessary and accident-related. *See* § 10–4–706(1)(b). Accordingly, the thirty-day payment period does not begin until the insurer receives reasonable proof that the expenses were reasonable and necessary and were incurred for bodily injury arising out of the use or operation of a motor vehicle. Whether such reasonable proof was received is for the fact finder.

■ Since an insurer has no obligation to pay for non-covered expenses, the insurer must be given a reasonable opportunity to determine whether the expense meets the criteria for payment. *See Burgess v. Mid–Century Insurance Co.,* 841 P.2d 325 (Colo. App.1992) (insurer has wide latitude to investigate claims and to resist false or unfounded efforts to obtain insurance funds as long as conduct is reasonable); *see also* § 10–3–1104, C.R.S. (1994 Repl.Vol. 4A) (unfair claim settlement practice includes, *inter alia,* refusing to pay claims without conducting a reasonable investigation based upon all available information or failing to affirm or deny coverage within a reasonable time after proof of loss statements have been completed).

■ Whether the treatment was reasonable and necessary is a question for the trier of fact. *Blankenship v. Iowa National Mutual Insurance Co.,* 41 Colo.App. 430, 588 P.2d 888 (1978).

By the terms of the statute then in effect, upon an insurer's failure to pay such benefits when due, the person entitled to such benefits could bring an action in contract to recover the same. *See* Colo. Sess. Laws 1989, ch. 82, § 10–4–708(1) at 458.

■ Here, plaintiff testified that, several years before the December 1989 accident, he had been a patient of his treating chiropractor because of back and neck problems. He also testified that he had surgery on his low back in 1972 as a consequence of an earlier injury, that he injured his neck in 1982, and that he experienced problems with his neck

and back in 1985 which required physical therapy.

For the 1989 accident, plaintiff had submitted proof of expenses for chiropractic care, use of a therapeutic machine called a Med X machine, and prolotherapy, and that defendant did not pay those bills within thirty days. According to plaintiff's evidence, the prolotherapist bills were submitted beginning in January 1992 and defendant made no decision until July 1992.

In response, in addition to evidence disputing the necessity for and the reasonableness of the type of treatment administered and the expenses associated with that treatment, defendant presented evidence that the chiropractor had provided treatment from 1990 until the summer of 1992 and that the chiropractor had been paid over $16,000. The claims adjuster for defendant testified that an independent medical examination (IME) was conducted in June 1990 and that defendant continued to pay personal injury protection charges. A second IME was conducted in November 1990 and the examining doctor felt that plaintiff was at maximum medical improvement and that the Med X treatment was not reasonable and necessary. However, defendant paid for chiropractic care through January 1991.

Evidence was also presented that plaintiff was referred to another doctor in February 1991 and underwent further Med X treatment until April 1991. Defendant's independent medical examiner issued a third report in April 1991 indicating that the use of the Med X rehabilitation was not a service of medical necessity.

Plaintiff was also referred to a third doctor for prolotherapy treatments from January 1992 to early 1993. Defendant sent plaintiff's attorney a letter in February 1992 informing him that it had requested an IME from a second doctor to be conducted in March 1992 regarding the prolotherapy. In April 1992, defendant sent another letter to plaintiff informing him that the independent medical examiner was going to review the prolotherapy bills. The IME physician opined in a May 1992 report that the treatment was not reasonable and necessary and also reported that the use of a Med X machine by plaintiff's second doctor was not reasonable and necessary. In July 1992, defendant decided that the prolotherapy was not reasonable and necessary, but paid for the initial visit. About seven months later, defendant sent another check for a prolotherapy treatment.

The jury was asked to determine whether "the defendant breach[ed] the contract by failure to pay or delay in payment for any of the plaintiff's reasonable, necessary and accident-related health care bills and expenses in accordance with provisions of the Colorado Auto Accident Reparations Act." The jury answered "no" to this question.

The record would support an inference by the jury that the health care bills and expenses incurred were either not reasonable, not necessary, or not accident related. Hence, denial of the motion for judgment notwithstanding the verdict was not error.

### III.

Plaintiff next contends that the trial court abused its discretion by improperly qualifying two experts. We disagree.

### A.

Without objection, the defense offered an expert witness in the areas of osteopathy and occupational therapy. However, during the expert's testimony, plaintiff's counsel objected because the witness was not a chiropractor and because he was not certified on Med X machines. The trial court overruled plaintiff's objection.

Plaintiff now contends that the trial court erred by allowing this expert testimony without a more complete foundation showing his qualifications. We disagree.

A witness may properly be qualified as an expert witness by virtue of "special knowledge, skill, experience, training, or education." CRE 702; *Colorado Arlberg Club v. Board of Assessment Appeals,* 719 P.2d 371 (Colo.App.1986), *rev'd on other grounds,* 762 P.2d 146 (Colo.1988).

The trial court has discretion in determining the qualifications of an expert

and the admissibility of expert evidence, and the court's ruling will not be disturbed absent an abuse of discretion. *Baird v. Power Rental Equipment, Inc.,* 191 Colo. 319, 552 P.2d 494 (1976). Once the witness is qualified as an expert, the fact that examination reveals that the witness cannot support his or her opinion with certainty goes only to the weight to be given to the opinion and not to its admissibility. *Vento v. Colorado National Bank—Pueblo,* 907 P.2d 642 (Colo.App. 1995).

The expert here, an osteopath who practices occupational medicine, testified regarding his independent medical examination of plaintiff. He testified that in his practice he uses techniques similar to those used by a chiropractor. While not certified in its use, the expert likewise testified regarding his research of and familiarity with the Med X machine, which he described as an exercise machine that is linked to a computer that generates data regarding exercising the neck, torso, or lower back.

Under these circumstances, we perceive no error in the trial court's ruling. *See Blankenship v. Iowa National Mutual Insurance Co., supra* (medical doctor competent to testify whether chiropractic services were "reasonable and necessary").

Plaintiff, however, claims that *Greene v. Thomas,* 662 P.2d 491 (Colo.App.1982) controls the standard for qualifying expert witnesses in this case. There, the court recognized that the expert witness in a medical malpractice case must have acquired, through experience or study, more than just a casual familiarity with the standards of care of the defendant's specialty. But, even if that standard is applied here, the record supports a determination that the expert's qualifications met such standard. *See also Stoczynski v. Livermore,* 782 P.2d 834 (Colo. App.1989).

We thus conclude that the court did not abuse its discretion in allowing defendant's expert to testify on these subjects.

## B.

■ Plaintiff also contends that the trial court erred in qualifying an attorney as an expert in insurance claims handling, insurance industry standards of care, and no-fault coverage since he had no expertise in adjusting claims and exhibited a lack of knowledge of the industry. We disagree.

■ Attorneys may testify as experts with respect to insurance industry standards. Present or former employees of the insurance industry are not the only persons qualified to render expert opinions about its operations. *Southerland v. Argonaut Insurance Co.,* 794 P.2d 1102 (Colo.App.1990) (attorney experts could properly testify as to standard of good faith conduct of an insurer). Here, there was an adequate foundation to demonstrate the witness' familiarity with and knowledge of insurance industry standards.

## IV.

■ Asserting the lack of proper foundation, plaintiff next contends that the trial court improperly admitted hearsay evidence of a report and addenda in defendant's no-fault file of a physician who was not available to testify. We reject this contention.

This report and addenda came from an independent medical examiner who had examined plaintiff and had provided to defendant an opinion with respect to plaintiff's condition. That written report and addenda were placed in a file together with other documents relating to plaintiff's claim.

It is undisputed that, in refusing to pay the bills submitted by plaintiff, defendant relied upon this opinion. Hence, the report and addenda were admissible, not to prove the truthfulness of the facts and opinions set forth therein, but to demonstrate that, given their contents, defendant had reasonably relied upon the doctor's opinion in refusing to pay plaintiff's claim. If admitted for this purpose, it was not hearsay. *See* CRE 801(c); *People v. Drake,* 748 P.2d 1237 (Colo. 1988) (statements made to expert witness upon which witness relied in forming opinion not hearsay under CRE 801(c)); *Hauser v. Rose Health Care Systems,* 857 P.2d 524 (Colo.App.1993).

■ Admissible evidence does not become inadmissible because a trial court relied

on an inappropriate rule of evidence. *People v. Quintana,* 882 P.2d 1366 (Colo.1994). *See also People v. Gardenhire,* 903 P.2d 1159 (Colo.App.1995).

■ Because plaintiff failed to request a special limiting instruction, the trial court committed no error in not providing one. *See Hauser v. Rose Health Care Systems, supra.*

Thus, the physician's report here was properly admitted to prove reasonable reliance and action by defendant.

## V.

■ Plaintiff next contends that the trial court erred in refusing to allow discovery directly from defendant of financial information of an unavailable physician whose report was offered at trial. We disagree.

During discovery, plaintiff requested from defendant "all records reflecting the amounts paid ... to [an independent medical examiner, a chiropractor (IME) ] ... including any and all ... tax forms for the years 1990, 1991, and 1992, for chiropractic examinations, consultation reports, or testimonial time conducted on behalf of or at the direction of the Defendant...." Upon defendant's objection, plaintiff moved to compel discovery. The trial court ruled that to require defendant to produce the financial information was burdensome and that plaintiff could simply take the doctor's deposition.

C.R.C.P. 26(b)(4), as then in effect, provided that facts known and opinions held by experts could be discovered only by certain procedures. The rule did not provide for discovery of the information sought by plaintiff.

Here, defendant provided information regarding the amount of compensation paid for the independent medical examiner's services in this case. The trial court's ruling did not completely prevent discovery of the information; it required only that plaintiff obtain further information from the doctor directly. Nothing in the record indicates that plaintiff requested the financial information from the doctor or that he refused to give his financial information to plaintiff.

Consequently, we conclude the trial court did not err in refusing the requested discovery.

## VI.

■ Because testimony regarding "aggressive" health care providers implied that plaintiff's doctors had submitted unreasonable and unnecessary bills, plaintiff next contends that the trial court erred in allowing such evidence. We disagree.

A defense witness testified regarding his experience with certain health care providers in the Colorado Springs area who provided extensive treatment to individuals in automobile accidents. According to the witness, some health care providers abuse the system by continuing to submit bills for services as long as they are paid.

■ Error in the reception of testimony is not prejudicial if another witness subsequently testifies to the same facts without objection. *Jacobs v. Commonwealth Highland Theatres, Inc.,* 738 P.2d 6 (Colo.App. 1986).

Here, another witness testified without objection on cross-examination to the effect that there are a lot of aggressive health care providers in the Colorado Springs area "out to make money off insureds" or insurance companies from auto accidents. Additionally, a senior claims officer testified on cross-examination, also without objection, that he had suspected "overreaching" by health care providers in his years as an insurance adjuster.

Thus, we cannot agree that the challenged testimony prejudiced plaintiff so as to require reversal.

## VII.

■ Plaintiff also argues that the trial court erred in refusing to instruct the jury that treatment prescribed by a licensed and competent health care provider is reasonable and necessary. Plaintiff specifically asserts that the term "reasonable and necessary" in the No Fault Act should be defined so as not to confuse the jury. We perceive no error.

The trial court rejected the following tendered jury instruction:

Treatment undertaken by the insured, when such treatment is justifiably prescribed by competent health care providers, it [sic] must be covered under the Colorado Auto Reparations Act, even if other practitioners suggest other treatment or no treatment at all is appropriate.

When the instructions given by the court are sufficiently comprehensive to advise the jurors on questions for their review, the trial court's refusal to tender a requested instruction is not error. *Weicker Transfer & Storage Co. v. Bedwell*, 95 Colo. 280, 35 P.2d 1022 (1934); *Felder v. Union Pacific R.R. Co.*, 660 P.2d 911 (Colo.App.1982).

Here, even if plaintiff's tendered instruction is supported by the statute, a comparison of the court's instructions and the tendered instruction indicates that the jury was instructed on all of the elements and necessary points of law regarding the language of the No Fault Act. The court instructed the jury, *inter alia*, that in order for the plaintiff to recover from the defendant for breach of contract, it must find, by a preponderance of the evidence, that the treatment not paid for by the defendant and received by the plaintiff was reasonable and necessary as a result of the accident. Whether defendant paid for all reasonable and necessary treatments was a question for the jury to determine, and thus, such issue did not need to be further defined.

Because the record reveals no objection by plaintiff's counsel during the witness' examination concerning a hand injury of plaintiff unrelated to the accident, this issue is not properly before us for review. *See Adler v. Adler*, 167 Colo. 145, 445 P.2d 906 (1968). *See also Bowers Building Co. v. Altura Glass Co.*, 694 P.2d 876 (Colo.App. 1984). Likewise, the record does not reveal any objection to statements during closing argument regarding the effect defendant's decisionmaking has on policyholders. Thus, any error was waived. *See Freeland v. Fife*, 151 Colo. 339, 377 P.2d 942 (1963); *Combined Communications Corp. v. Public Service Co.*, 865 P.2d 893 (Colo.App.1993).

The judgment is affirmed.

CRISWELL and TAUBMAN, JJ., concur.