CARPARELLLI, J.
 

 In this action for declaratory judgment regarding the stacking of uningsured/underin-sured (UM/UIM) insurance coverage, plaintiff, Marazon A. Bush, appeals the summary judgment in favor of defendant, State Farm Mutual Automobile Insurance Company. We affirm.
 

 Plaintiff's daughter, Leala Bush, was riding as a passenger in her brother's car when a pickup crossed the highway median, struck the car, and killed her. The tortfeasor's insurance company paid its $100,000 policy limit to plaintiff.
 

 Leala Bush was the named insured on a State Farm automobile policy. Because she lived with her brother, she was also insured under the terms of a policy State Farm had issued to her brother. Each policy has a bodily injury limit of $100,000 per person.
 

 Plaintiff submitted a claim to State Farm for $100,000, which plaintiff viewed as the difference between the combined UM/UIM coverage of the two State Farm policies and the amount paid by the tortfeasor's insurance. State Farm denied the claim, and plaintiff sued for a declaration of State Farm's obligations.
 

 The trial court granted summary judgment in favor of State Farm, concluding that the two UM/UIM policies cannot be stacked.
 

 
 *1142
 
 I.
 

 We review de novo a trial court's decision to grant summary judgment. We independently review the record and evaluate the summary judgment motion in the same manner as does the trial court. Nasco v. State Farm Mut. Auto. Ins. Co., 12 P.3d 346 (Colo.App.2000); Evinger v. Greeley Gas Co., 902 P.2d 941 (Colo.App.1995).
 

 We also review a trial court's interpretation of an insurance contract de novo, and look to the language of the contract to establish the intent of the parties. Union Ins. Co. v. Houtz, 883 P.2d 1057 (Colo.1994). We give the words their plain meaning, avoid strained and technical interpretations, and construe the contract as would a reasonable person of ordinary intelligence. Simon v. Shelter Gen. Ins. Co., 842 P.2d 286 (Colo.1992); Compton v. State Farm Mut. Auto. Ins. Co., 870 P.2d 545 (Colo.App.1998). We also read the contract in its entirety and construe it so that all provisions are harmonious and none is rendered meaningless. Pepcol Mfg. Co. v. Denver Union Corp., 687 P.2d 1310 (Colo.1984).
 

 Section 10-4-609(2), C.R.S.2004, permits insurance policies to contain provisions that prevent an insured and resident relatives of the insured from stacking UM/UIM limits and, thus, from obtaining coverage under multiple UM/UIM policies issued by the same insurer.
 

 Section 10-4-402(8.5), C.R.9.2004, defines stacking as "aggregating, combining, multiplying, or pyramiding limits of separate poli-cles providing uninsured and underinsured motorist coverage as provided in section 10-4-609." The most common application of stacking occurs when a claimant seeks to place the limits of multiple policies on top of one another and to exhaust the limits of each policy until all damages have been compensated. See, eg., Shelter Mut. Ins. Co. v. Thompson, 852 P.2d 459 (Colo.1993)(claimant sought to stack the limits of six policies and to be compensated under the combined limits).
 

 IL
 

 Plaintiff contends that the trial court erred when it concluded that the UM/UIM coverage in the two policies could not be stacked. She argues that the State Farm policies permit stacking of the UM/UIM coverage "to determine whether Plaintiff is un-derinsured" (emphasis added) and that State Farm is obligated to pay her $100,000. We disagree.
 

 Both policies at issue here contain the following pertinent provisions:
 

 [State Farm] will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.
 

 [[Image here]]
 

 Uninsured Motor Vehicle means
 

 [[Image here]]
 

 3. an "underinsured" land motor vehicle, the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident, but the limits of lability for bodity injury under such insurance or bonds are:
 

 a. less than the limits of this coverage under this policy
 

 [[Image here]]
 

 Limits of Liability
 

 [[Image here]]
 

 3. The most we will pay under this coverage will be the lesser of:
 

 a. The difference between the limits of liability of this coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
 

 b. The amount of damages sustained, but not recovered.
 

 If There Is Other Coverage
 

 1. If Other Policies Issued by Us to You or Your Relatives Apply
 

 If two or more motor vehicle Hability policies issued by us to you or any relative providing uninsured motor vehicle coverage apply to the same accident, the total limits of lability under all such
 
 *1143
 
 policies shall not exceed that of the policy with the highest limit of liability.
 

 A.
 

 We first reject plaintiff's assertion that "Plaintiff is underinsured" and that "the maximum State Farm would have to pay to an underinsured motorist in this case" is limited to $100,000 (emphasis added).
 

 In the UM/UIM section of each policy, State Farm is obligated to pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of a land motor vehicle, the use of which is insured for bodily injury liability but the limits of that liability insurance are "less than the limits of this coverage under this policy."
 

 Under the plain meaning of this provision, plaintiff is not the owner or driver of an underinsured motor vehicle, and State Farm has no obligation to make any payment to any such underinsured motorist.
 

 B.
 

 We next consider the limit of State Farm's total Hiability under the two policies.
 

 There is no dispute that State Farm issued one policy to Leala Bush and one to her brother with whom she resided; that the UM/UIM coverage in each policy applies to the accident; and that each policy has a bodily injury liability limit of $100,000.
 

 The "Other Coverage" provision in each policy states that if State Farm issues two or more policies to a named insured or to any person related to the insured who resides primarily with the insured and the UM/UIM coverage in both policies applies to the same accident, "the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of Hability."
 

 Plaintiff contends that this provision does not specifically prevent her from stacking the policies to determine whether the tortfeasor is underinsured.
 

 She argues that the policy terms "liable" and "lability" clearly, unambiguously, and consistently refer to the amount State Farm may owe to an insured under the policy and that "coverage" refers to the "full potential" of the policy, or combination of policies. She contends that, as a result, the State Farm policies do not prohibit the stacking of "coverage" provided by the two policies. Instead, they merely limit State Farm's liability to the limits of any single policy. Thus, plaintiff posits that the total coverage of the two policies is $200,000, but that State Farm may "owe her," "be liable to her for," or "have lability for" only $100,000. We are not persuaded.
 

 Giving the words of this provision their plain meaning, we conclude that, regardless of the number of State Farm policies that apply to this accident, State Farm's maximum lability for bodily injury an insured sustains cannot be more than the limit of liability of the policy with the highest Hability limit. See Curry v. Farmers Ins. Exch., 101 P.3d 1133, 2004 WL 2278281 (Colo.App. No. 03CA0629, Oct. 7, 2004). Here, State Farm's maximum liability under the combination of both policies is $100,000.
 

 C.
 

 We now consider State Farm's obligation to pay any of that amount here.
 

 Plaintiff contends that the policy does not "specifically [prohibit] stacking of the coverages in the manner" she proposes. We conclude that State Farm has no obligation to compensate plaintiff under the plain and ordinary meaning of the policy terms.
 

 Plaintiff appears to argue that, in accordance with the "Other Coverage" provision, State Farm's "total limits of liability" cannot exeeed $100,000, the limit of the policy with the highest limit. She contends that, because she does not seek more than that amount, this provision does not prevent her from stacking the limits of the two policies for the sole purpose of determining that the tortfeasor is underinsured.
 

 The UM/UIM limits of lability provisions in the policies are identical and the same analysis applies to both. However, for clarity, we first consider Leala Bush's policy.
 

 Leala Bush's policy states that the amount of coverage as shown on the declarations page is $100,000 for all damages due to bodi
 
 *1144
 
 ly injury to one person. It also states that, "under this coverage," State Farm will not pay more than the difference between the limits of liability of the policy's UM/UIM coverage and the amount paid to the insured by or for any person who may be legally liable for the bodily injury.
 

 The amount paid to plaintiff by the tortfea-sor's insurance company was $100,000.
 

 We conclude that the words "this coverage" plainly refer to coverage provided by the policy State Farm issued to Leala Bush.
 

 Even if we ignore the plain meaning of the phrase "this coverage" and interpret it as proposed by plaintiff, we reach the same result.
 

 We have already concluded that State Farm's maximum liability under the combination of both policies is $100,000. Thus, even if we interpret "this coverage" to mean the coverage provided by all State Farm policies under which Leala Bush was an insured, we would still conclude that the most State Farm would be obligated to pay under the two policies is zero, which is the difference between $100,000 (State Farm's maximum liability under the two policies) and $100,000 (the amount paid by the tortfeasor's insurance).
 

 Thus, we conclude that there is no interpretation of the policy that would allow plaintiff to stack the two policies such that "the difference between the limit of liability of this coverage" and the amount paid by the tort-feasor's insurance could be calculated as $200,000 minus $100,000.
 

 Because there is no difference between State Farm's maximum liability and the amount the tortfeasor's insurer paid to plaintiff, State Farm has no obligation to pay anything to plaintiff under the UM/UIM coverage in Leala Bush's policy.
 

 Applying the same analysis to the brother's policy, State Farm has no obligation to pay plaintiff under the brother's UM/UIM coverage.
 

 Thus, consistent with the purpose of the statute's and the policies' underinsured motorist provisions, our ruling here provides an injured party who has UM/UIM coverage with the same benefits she would have regardless of whether the other motorist was uninsured, insured for an amount less than the limits of her own policy, or insured for an amount equal to those limits. Section 10-4-609; Shean v. Farmers Ins. Exch., 984 P.2d 885 (Colo.App.1996); see Kral v. Am. Hardware Mut. Ins. Co., 784 P.2d 459 (Colo.1989).
 

 IIL.
 

 To the extent that plaintiff also contends that § 10-4-609(4), C.R.S.2004, allows UM/ UIM policies to be "stacked to determine whether somebody is underinsured," we need not resolve her contention.
 

 Even if the statute permits such policies to be stacked, it expressly allows insurance poli-cles to "contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy," as State Farm has done in these policies. Section 10-4-609(2).
 

 Moreover, because our ruling here rests primarily on the plain meaning of the poli-cles' common limits of liability provision rather than the antistacking provision, plaintiff's contention, if correct, would not affect our ruling.
 

 Judgment affirmed.
 

 Judge CASEBOLT and Judge NEY concur.