FILED
United States Court of Appeals
Tenth Circuit

January 6, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENT CIRCUIT

---

KIMBERLEY BREAUX; LORI
CHAMBERS; CRYSTAL HAMRICK,

    Plaintiffs,

and

MARTIN PERSICHITTE; ROBERT
W. REFFEL; MICHAEL
WHITEHEAD,

     Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, a
Wisconsin corporation,

    Defendant-Appellee.

Nos. 07-1136, 07-1446

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 04-cv-191-EWN-MJW)**

---

Megan E. Waples (Robert B. Carey and Julie B. Cliff, on the briefs), of The
Carey Law Firm, Colorado Springs, Colorado, for Plaintiffs-Appellants.

A. Peter Gregory (Robert W. Harris, with him on the brief), of Harris, Karstaedt,
Jamison & Powers, P.C., Englewood, Colorado, for Defendant-Appellee.

Before **BRISCOE, EBEL,** and **MURPHY**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Robert Reffel, Martin Persichitte, and Michael Whitehead ("plaintiffs") brought this diversity action against American Family Mutual Insurance Co. ("American Family"), alleging that by failing to disclose, offer, and provide certain personal injury protection ("PIP") coverage, American Family: (1) violated the Colorado Auto Accident Reparations Act ("CAARA" [Colo. Rev. Stat. § 10-4-701 *et seq.* (repealed July 1, 2003)]); (2) breached their insurance contracts; (3) breached their insurance contracts in bad faith; and (4) breached the implied covenant of good faith and fair dealing. On cross motions for summary judgment, the district court granted summary judgment to American Family on the claims of Mr. Persichitte and Mr. Reffel, and on American Family's argument that all reformed policies were subject to a $200,000 limit; found that Mr. Whitehead failed to state a claim regarding one of his policies; and found disputed issues of material fact regarding the nature of the offer to Mr. Whitehead. The issue of the nature of the offer to Mr. Whitehead proceeded to trial. The jury found American Family failed to adequately offer PIP coverage, breached the contract, and acted in bad faith. The jury awarded damages for bad faith and exemplary damages. The district court entered a judgment for damages

on the breach of contract and bad faith claims, but held the contract was not reformed until the date of the court's post-trial order. Consequently, the court refused to award statutory penalties for interest or treble damages.

Plaintiffs appeal the district court's rulings interpreting portions of the CAARA. Among the issues presented are: (1) whether the reformed policies contained aggregate limits; (2) whether the reformed policies permitted "stacking"—combining the aggregate limits from separate policies; (3) what level of specificity is required in pleading as to which insurance policy required reformation; (4) whether the offer requirement applied when insurers renewed policies; and (5) what is the appropriate date of reformation. Additionally, plaintiff Whitehead appeals the district court's post-trial orders denying attorney fees. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part, and reverse in part and remand.

I

The relevant, underlying facts are undisputed. American Family issued insurance policies that covered plaintiffs. American Family issued the policy covering Mr. Reffel in 1984, and renewed the relevant policy on August 21, 1996. American Family issued the policy covering Mr. Persichitte in 1987, and renewed the relevant policy on May 5, 1997. Despite the CAARA offer requirements, American Family did not offer the enhanced PIP coverage from 1992 to January 29, 2001.

3

American Family issued the policy covering Mr. Whitehead, and the relevant automobile, on April 5, 1995, and renewed the policy on May 23, 2001. Mr. Whitehead also purchased another policy on May 30, 2001 ("the May 2001 policy"). The American Family agent who sold policies to Mr. Whitehead failed to offer enhanced PIP in a manner that complied with the CAARA.

Each plaintiff suffered injuries as a result of unrelated automobile accidents. Mr. Reffel's accident occurred on December 3, 1996; Mr. Persichitte's accident occurred on October 6, 1997; and Mr. Whitehead's accident occurred on September 26, 2002. American Family did not reform the relevant policies to include enhanced PIP coverage. On March 22, 2004, plaintiffs filed a joint complaint alleging jurisdiction pursuant to 28 U.S.C. § 1332 and seeking reformation of their policies under the CAARA, damages, costs, and attorney fees.[1]

On September 1, 2006, the district court granted in part American Family's motion for partial summary judgment. In that order, the district court: (1) dismissed Mr. Reffel's claims as barred by the statute of limitations; (2) dismissed Mr. Persichitte's claims because his policies were issued before the enactment of the CAARA, rejecting the argument that the CAARA applied when

---

[1] Plaintiffs' claims were consolidated with claims brought by Kimberley Breaux against American Family. Kimberley Breaux is not a party to the present appeals.

policies were renewed; (3) dismissed Mr. Whitehead's claims related to the May 2001 policy because there was no reference to the May 2001 policy in the complaint and found amendment of the complaint untimely; (4) granted American Family's request for a judicial declaration that plaintiffs may not stack coverage; and (5) granted American Family's request for a judicial declaration that plaintiffs' policies subject to reformation are also subject to a $200,000 aggregate limit.

A jury trial was held to decide Mr. Whitehead's remaining claims. The jury found that American Family willfully and wantonly breached his insurance contract and acted in bad faith. The jury awarded Mr. Whitehead $250,000 in noneconomic damages and $1,000,000 in exemplary damages. After the verdict, Mr. Whitehead filed a motion to increase the exemplary damages award and to award stipulated breach of contract damages, treble breach damages, statutory interest on breach damages, prejudgment interest, postjudgment interest, trial costs and attorney fees. The parties agreed that because the jury awarded Mr. Whitehead $250,000 in compensatory damages, the jury was limited to awarding $250,000 in exemplary damages.

On February 13, 2007, the district court ruled on Mr. Whitehead's motion to increase his damages award and also award interest, costs, and fees. The court determined the amount of the stipulated breach of contract damages was $69,312.41. While the district court found that reformation was appropriate, it

applied the date of the order, February 13, 2007, as the date of the reformation. As a result, the district court did not grant any statutory interest on the breach of contract award. Similarly, because trebling damages is appropriate when there is a failure to pay benefits when due, and the benefits were not due until the date of the order, the district court did not treble damages. The district court also denied attorney fees, citing the appropriate federal and local rules in response to Mr. Whitehead's "one-sentence motion." App. at 1105.

Unsure whether the February 13, 2007 order was the entry of a final judgment, the parties filed a joint motion for extension of time regarding Mr. Whitehead's motions for costs and attorney fees. The district court granted this motion on February 26, 2007, extending the deadline to March 6, 2007. On February 27, 2007, the district court entered final judgment. During the late evening of March 6, 2007 and the early morning of March 7, 2007, counsel for Mr. Whitehead filed a motion for attorney fees. The district court denied this motion under the Federal Rules of Civil Procedure and the local rules.

Mr. Whitehead filed a motion to reconsider and a revised motion for attorney fees. Because the district court did not find inadvertent error, the court denied the motion to reconsider. The court denied the revised motion for attorney fees because it was untimely.

## II

**A.    Issues Related to the September 1, 2006 Summary Judgment Order**

Because this is a diversity action, the laws of the forum state, Colorado, govern our analysis of the underlying claims. Federal law, however, governs our analysis of the district court's summary judgment rulings. Reid v. Geico Gen. Ins. Co., 499 F.3d 1163, 1165 (10th Cir. 2007). We review summary judgment rulings de novo and apply the same standard as the district court, Rule 56(c) of the Federal Rules of Civil Procedure. Id. (citing Hill v. Allstate Ins. Co., 479 F.3d 735, 739 (10th Cir. 2007)). Under Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Mr. Reffel, Mr. Persichitte, and Mr. Whitehead claim the district court erred in several regards in its September 1, 2006 summary judgment order. First, they assert that the insurance policies at issue did not contain an aggregate limit that complied with § 10-4-710(2)(b) of the CAARA. Second, they disagree with the district court's determination that the policies prohibited stacking. Third, Mr. Whitehead challenges the district court's findings that he did not include in his complaint any claims based on the May 2001 policy and that any subsequent attempt to amend the complaint would be untimely. Fourth, Mr. Persichitte objects to the district court's determination that § 10-4-710 only required American Family to offer enhanced PIP coverage when issuing new policies, and not—as is the present situation—when renewing policies. Fifth, Mr. Reffel objects to the district court's application of the statute of limitations to bar his

claims.

1.      Aggregate Limits

Section 10-4-710(2)(b) provided:

A complying policy may provide that all benefits set forth in section 10-4-706(1)(b) to (1)(e) and in this section are subject to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person as a result of any one accident arising out of the use or operation of a motor vehicle.

The district court found that the policies, through PIP endorsements, "both expressly contemplate and clearly establish $200,000 aggregate caps." App. at 797. The district court noted that the endorsements contain charts of available PIP coverage with "**DELUXE PIP AGGREGATE LIMIT – $200,000 per person**" indicated at the top of the charts. Id. Based on this, the district court found that the policies contained aggregate limits.

In their appeal, Mr. Reffel, Mr. Persichitte, and Mr. Whitehead argue that because the limit only applies on a "per person" basis, and not on a "per person, per accident" basis, the limit does not comply with the statute. Consequently, they conclude the limit is unenforceable. Additionally, they argue that § 10-4-710(2)(b) only applies to complying policies. They contend that the present policies are non-complying policies based on their treatment of rehabilitation benefits, deductibles, and co-insurance.

a.      Per Person, Per Accident

Plaintiffs acknowledge that the PIP endorsements contain the language

8

"AGGREGATE LIMIT – $200,000 per person" and reference "an accident," but contend that there is not a sufficient connection between these references to satisfy § 10-4-710(2)(b). We disagree. The reference to "an accident" appears in conjunction with a list of what PIP benefits will be paid. Similarly, a provision titled "Limits of Liability" contains the statement "our liability for [PIP] benefits for bodily injury sustained by an eligible injured person in one motor vehicle accident is limited as follows . . . ." App. at 478. These references make clear that the monetary cap applies per person and per accident.

b.      Complying Policy

Section 10-4-703(2) defined a complying policy as:

> a policy of insurance which provides the coverages and is subject to the terms and conditions required by this part 7, and is certified by the insurer and the insurer has filed a certification with the commissioner that such policy, contract, or endorsement conforms to Colorado law and any rules or regulations promulgated by the commissioner.

"Part 7 required coverages for liability, and PIP medical expenses, rehabilitation, wage loss, essential services, and death benefits." Zahner v. Am. Family Mut. Ins. Co., 179 P.3d 98, 102 (Colo. Ct. App. 2007). If a policy provides these coverages, it is a "complying policy." Id.

Here, plaintiffs contend that portions of their policies do not provide the coverages required by Part 7. They point to provisions that: (1) prevent excess rehabilitation benefits from covering medical expenses; and (2) reduce the

9

maximum of payable benefits by the amount of deductibles and co-insurance.

Even if we were to assume that plaintiffs are correct in their reading of the

policies, this argument alone does not change the aggregate limits set forth in the

policies.

If a policy does not provide these minimum coverages required by the

CAARA, "the policies would be reformed to provide those minimum coverages."

Colby v. Progressive Cas. Ins. Co., 928 P.2d 1298, 1300 n.1 (Colo. 1996) (also

noting that the CAARA "is incorporated into every automobile insurance

policy"). Reformation of the policy only alters the defective portion to comply

with the CAARA, leaving the remainder unchanged. Stickley v. State Farm Mut.

Auto. Ins. Co., 505 F.3d 1070, 1080 (10th Cir. 2007) ("[W]hen an insurance

policy is found to violate CAARA, only the defective portion of the policy is

reformed to comply with CAARA. It does not wipe the slate clean and give the

insured the fullest amount of benefits available for every category possible."). As

a result, a policy that initially contained aggregate limits, but is later reformed,

continues to contain aggregate limits after reformation. See Clark v. State Farm

Mut. Auto. Ins. Co., 433 F.3d 703, 711 (10th Cir. 2005) ("Thus, we agree with the

district court that the . . . policy's $200,000 aggregate limit applies to benefits

under the reformed policy.").

2.     Stacking Policies

Because we conclude the reformed policies have aggregate limits, we next

10

determine if those limits can be stacked. As the district court noted, "[s]tacking means 'aggregating, combining, [or] multiplying . . . limits of separate policies . . . .'" Estate of Curry ex rel. Bowen v. Farmers Ins. Exch., 101 P.3d 1133, 1135 (Colo. Ct. App. 2004) (quoting Colo. Rev. Stat. § 10-4-402(3.5)). Colorado allows anti-stacking provisions. Id. The district court concluded that the "plain language of the PIP endorsement expressly proscribes stacked coverage." App. at 800. To support this conclusion, the district court quoted from the PIP endorsement, "no eligible injured person shall recover duplicate benefits for the same elements of loss under this and any similar insurance." Id. Similarly, the district court highlighted the "Limits of Liability" provision stating:

> No matter how many persons are insured, policies [] apply, claims are made[,] or insured motor vehicles to which this coverage applies, [American Family's] liability for [PIP] benefits for bodily injury sustained by an eligible injured person in one motor vehicle accident is limited . . . . The total aggregate amount payable for medical expenses, rehabilitation expenses, work loss, essential expenses, and death compensation, [sic] shall not exceed the amount s[h]own in the schedule of this endorsement.

Id. The district court also considered the relation of the aggregate limit to stacking and determined the overall limit to American Family's liability was $200,000. Id.

Plaintiffs argue that the provisions the district court quoted do not apply to stacking. Plaintiffs contend that the block quotation from the "Limits of Liability" provision only addresses the per-occurrence liability on a single policy.

11

Regarding the "duplicate benefits" quotation, plaintiffs contend that it only bars insureds from collecting benefits twice for the same bills, which plaintiffs assert is not at issue in this case.

In contrast, plaintiffs point to another provision in the PIP endorsement that they contend supports stacking. This provision states:

> If an eligible injured person has other similar insurance, including self-insurance, for a loss covered by this endorsement, we will pay our share according to this endorsement's proportion of the total limits of all similar insurance. But, this does not apply to optional benefits purchased by that eligible person for additional premiums on a voluntary basis.

Aplt. Br. at 43.

American Family responds by highlighting portions of the endorsement that it believes prohibit stacking. This includes the "Limits of Liability" and "duplicate benefits" provisions quoted by the district court. Additionally, American Family cites the "Two or More Cars Insured" provision, which states, "The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy. When this policy insures two or more cars, the coverages apply separately to each car . . . ." Aple. Br. at 28. American Family also references cases from the Colorado Court of Appeals and Colorado Supreme Court that considered similar language to be valid anti-stacking provisions. E.g. Shelter Mut. Ins. Co. v. Thompson, 852 P.2d 459, 464 (Colo. 1993); Am. Standard Ins. Co. v. Ekeroth, 791 P.2d 1220 (Colo. Ct.

12

App. 1990).

We agree with American Family's interpretation of the policy provisions. The "other similar insurance" provision contemplates insurance from a third party other than American Family. As plaintiffs concede, "this provision does not apply to enhanced PIP . . . ." Aplt. Br. at 44. The remainder of the provision is a proration clause. In Shean v. Farmers Ins. Exch., 934 P.2d 835, 838 (1996), the Colorado Court of Appeals stated:

> That a proration clause must be viewed as irrelevant when, as here, a policy contains a separate, intra-company anti-stacking clause and all applicable policies have been issued by one insurer is . . . consistent with the typical use of a proration clause. A *pro rata* clause is just one clause of the standard insurance industry *inter-company* anti-stacking provision that is intended both to limit the amount of total recovery to that available under one policy, and to distribute that liability among companies.

Here, there are "separate, intra-company anti-stacking clause[s]." The Colorado Supreme Court has considered language identical to the "Two or More Cars Insured" clause presently at issue to be anti-stacking clauses that were "unambiguous according to existing precedent in this jurisdiction." Roberts v. Am. Family Mut. Ins. Co., 144 P.3d 546, 551 (Colo. 2006) (discussing the clauses' conspicuousness). Thus, the policy's statement, "The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy," serves as an enforceable anti-stacking clause.

Plaintiffs contend that the concluding sentence, "[W]hen this policy insures

13

two or more cars, the coverages apply separately to each car," limits coverage on a vehicle basis. Plaintiffs argue this violates the CAARA requirement that PIP coverage "is mandatory when a [person in a class that requires PIP coverage] is injured in an accident with *any* motor vehicle, irrespective of the insured's occupancy in a particular vehicle at the time of injury." DeHerrera v. Sentry Ins. Co., 30 P.3d 167, 173 (Colo. 2001).

Plaintiffs' argument misconstrues the "Two or More Cars" provision. First, the separate application of coverage to each car does not imply that PIP coverage will not be provided according to CAARA requirements. This provision does not state that it is limiting the coverage. Second, the separate application of coverage to each car does not modify the preceding statement.

Alternatively, Mr. Reffel contends that the references to "our," "you," and "us" preclude application of the anti-stacking provisions to his policies. Mr. Reffel reads the policies to define "you" as "the policyholder named in the declaration and spouse, if living in the same household." Aplt. Br. at 45. This definition omits resident relatives. Mr. Reffel was an eligible injured person under a policy issued to him and a resident relative under policies issued to his father. Resolving this issue is unnecessary, however, because other provisions applicable to Mr. Reffel also prohibit stacking.

The "Limits of Liability" provision—"No matter how many persons are insured, policies or bonds apply, claims made or insured motor vehicles to which

14

this coverage applies, our liability for [PIP] benefits for bodily injury sustained by an eligible injured person in one motor vehicle accident is limited . . . ."— indicates that American Family's liability is limited to the amount in the schedule of the Endorsement. See Bush v. State Farm Mut. Auto. Ins. Co., 101 P.3d 1145, 1147 (Colo. Ct. App. 2004) ("Giving the words of this provision their plain meaning, we conclude that, regardless of the number of . . . policies that apply to this accident, State Farm's maximum liability . . . cannot be more than the liability of the policy with the highest liability limit."); Shean, 934 P.2d at 840 (finding that similar language contains valid anti-stacking and "per occurrence" limits on liability); but see Estate of Curry ex rel. Bowen v. Farmers Ins. Exch., 101 P.3d 1133, 1136 (Colo. Ct. App. 2004) (citing Shean for the conclusion that similar language is only a "per occurrence limitation on liability and not an anti-stacking provision").

3.    Mr. Whitehead's May 2001 Policy

American Family reasons that if the court were to find that anti-stacking provisions applied to Mr. Whitehead's claim, then any error by the district court in dismissing the May 2001 policy claim would be harmless. As stated, anti-stacking provisions do apply to Mr. Whitehead's claims. Additionally, Mr. Whitehead already has received the maximum PIP benefits he could receive under the aggregate limit of the relevant policy. Mr. Whitehead responds that the error is not harmless because he is "entitled to a determination of his rights under the

15

May 2001 policy, and his claim [of] bad faith attendant to that policy remains valid." Aplt. Reply Br. at 4.

The basis of this dispute is the district court's finding that the complaint did not include any claim arising from the May 2001 policy. To support this finding, the district court read the complaint to only assert claims based on policies procured between 1979 and 1999. These dates identify which policies are at issue. The district court "note[d] that Plaintiff Whitehead's argument [for reformation of the May 2001 policy] is not contained in Plaintiffs' complaint, and appears for the first time in Plaintiff Whitehead's motion for partial summary judgment." App. at 791. The district court then considered whether amendment of the complaint was appropriate.

In its analysis, the district court began by reciting standards addressing whether the new claim would shift "the thrust of the case" or "prejudice the other party" by denying defendant "fair notice." Id. Ultimately, the district court considered the timing of the amendment and whether Mr. Whitehead could explain the lack of timeliness. Finding no valid explanation, the district court denied the "implicit motion to amend." Id. at 792.

We review de novo a district court's dismissal of claims based on failure to plead adequate facts. United Steelworkers of Am. v. Or. Steel Mills, Inc., 322 F.3d 1222, 1228 (10th Cir. 2003). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is

16

entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)). The degree of specificity needed to establish plausibility and fair notice, and the need for sufficient factual allegations depend upon the context of the case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

Does the complaint's statement that "[f]rom 1979 to 1999, Plaintiffs procured Colorado automobile insurance policies from Defendant American Family" restrict plaintiffs' claims to only those based upon policies from that time period? To impose such a limitation on plaintiffs' claims is inappropriate. The complaint does not contain any other limiting statement about which policies are at issue. Although there were several plaintiffs, the complaint used broad language such as "each named insureds' . . . policy." E.g. App. at 62. Significantly, the district court was incorrect in its statement that arguments addressing the May 2001 policy first appeared in Mr. Whitehead's motion for partial summary judgment. American Family's brief supporting its motion for partial summary judgment, which was filed on the same day but before Mr. Whitehead's motion, addressed the May 2001 policy multiple times and requested dismissal of all of Mr. Whitehead's claims. American Family apparently had fair notice of Mr. Whitehead's claims and upon which policies these claims were

17

based.

The district court erred by concluding that the complaint did not include claims based on the May 2001 policy. Accordingly, we must determine if this error warrants reversal. Reversal is unwarranted if inclusion of the May 2001 policy in the complaint would not support any of Mr. Whitehead's claims. See Fed. R. Civ. P. 61 (discussing harmless error).

The only claim based on the May 2001 policy that Mr. Whitehead argues remains valid is the bad faith breach of contract claim. Under Colorado law, "[a]n insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances." Goodson v. Am. Standard Ins. Co. of Wis., 89 P.3d 409, 415 (Colo. 2004). This requires the insured to prove, based on insurance industry standards, "that the insurer's conduct was unreasonable and that the insurer either knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable." Burgess v. Mid-Century Ins. Co., 841 P.2d 325, 328 (Colo. Ct. App. 1992) (citing Travelers Ins. Co. v. Savio, 706 P.2d 1258 (Colo. 1985)). The analysis centers on the insurer's conduct, and not on its "ultimate financial liability." Goodson, 89 P.3d at 416.

American Family argues that the court's determination that anti-stacking provisions apply removes any financial liability it may have under the May 2001 policy, and makes harmless any error regarding dismissal of claims based on the

18

policy. This argument is not fully responsive. Questions remain whether American Family's conduct regarding the May 2001 policy was reasonable, and whether it knew that its conduct was unreasonable or recklessly disregarded that fact. These questions are independent of whether American Family had a duty to stack Mr. Whitehead's policies. Thus, if the district court erred, the error was not necessarily harmless.

We are unable to conclusively answer whether the error was harmless and whether Mr. Whitehead suffered any compensable damages as a result of American Family's actions regarding the May 2001 policy because the district court prematurely dismissed the claim. As a result, we remand this issue to the district court for further proceedings.

4.    Mr. Persichitte's and Mr. Reffel's Claims—Does Renewal Trigger the PIP Offer Requirement?

The district court granted American Family summary judgment on Mr. Persichitte's and Mr. Reffel's claims. The district court rested this ruling in part upon the conclusion that the CAARA in effect when American Family issued the Persichitte policy did not require the offer of enhanced PIP benefits, which forms the basis of Mr. Persichitte's.[2] Although Mr. Persichitte and Mr. Reffel renewed

_____

[2] Although the district court applied its reasoning only to Mr. Persichitte's claims, it noted that "the same analysis would apply equally to Plaintiff Reffel's claims." App. at 784.

19

their policies after the CAARA was amended to require the offer of optional enhanced PIP benefits, the district court concluded the renewal of a policy is not the same as the issuance of a policy under the CAARA. Mr. Persichitte—along with Mr. Reffel implicitly—appeals this conclusion.

We review the district court's interpretation of Colorado statutes de novo. See Freightquote.com, Inc. v. Hartford Cas. Ins. Co., 397 F.3d 888, 892 (10th Cir. 2005) (citing Salve Regina Coll. v. Russell, 499 U.S. 225, 239 (1991), for the statement, "The obligation of responsible appellate review and the principles of a cooperative judicial federalism underlying Erie require that courts of appeals review the state-law determinations of district courts de novo.").

Resolving the issue of whether, under the CAARA, the renewal of a policy equates to the issuance of a policy requires that we reconcile whether statutory interpretation controls, as found by the district court, or whether we should rely upon case law, as argued by Mr. Persichitte.[3] The statute at issue was Colo. Rev.

---

[3] The Colorado Court of Appeals has addressed this issue. The ambiguity in its ruling, however, makes the issue more unclear. In Warwick v. State Farm Mut. Auto. Ins. Co., 886 P.2d 323 (Colo. Ct. App. 1994), the Colorado Court of Appeals addressed when a different amendment to the CAARA took effect. Relevantly, the Warwick court stated:

> The legislative history of the statute here reveals that the General Assembly intended the amendments to apply only to automobile insurance policies *issued* after July 1, 1991 . . . . To clarify that the amendments to the No-Fault Act proposed by the bill applied only to insurance policies *issued or renewed* on or after July 1, 1991, the

(continued...)

20

Stat. § 10-4-710. In 1992, the Colorado legislature amended this statute to require an insurer to offer enhanced PIP benefits. Colo. Rev. Stat. § 10-4-710(2)(a) (2002). The amendment only applied "to policies issued on and after July 1, 1992." Id. at § 10-4-710(4) (2002).

Significantly, § 10-4-710(4) did not include a reference to policies that were renewed on and after July 1, 1992. This is in contrast to other statutes and bills that reference both issuance and renewal. E.g. § 10-4-609(2) (2002) ("Prior to the time the policy is issued or renewed . . . .); H.B. 92-1176 § 13 (Colo. 1992) ("This act shall apply to all policies issued or renewed on or after July 1, 1992."). The Colorado Supreme Court's application of the canons of statutory construction to look first to the plain meaning of a statute suggests that the inclusion of "issued" necessarily excludes "issued or renewed." Lunsford v. W. States Life Ins., 908 P.2d 79, 84 (Colo. 1995) ("Where the language of a statute is clear on its face, we must apply it as written. . . . Furthermore, when the legislature

_____

[3](...continued)
General Assembly amended the enacting provision to include, after the word "policies," the phrase "*issued* on or after July 1, 1991." . . . This modification was adopted by the General Assembly. Hence, the legislative history reveals that the General Assembly intended the amendments to affect only insurance policies *issued* after July 1, 1991. This interpretation is consistent with the rule of statutory construction that legislation is presumed to have a prospective effect unless a contrary intent is expressed by the General Assembly.

Id. at 325 (citations omitted) (emphasis added).

21

speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others."). The district court concluded that § 10-4-710(2)(a) applied only to policies issued on and after July 1, 1992 and that it did not apply to policies issued before July 1, 1992, but renewed after July 1, 1992.

Mr. Persichitte disagrees with the district court's interpretation of the statute and instead emphasizes the case law definition of "issued." Under Colorado insurance law, "a renewal policy is 'just as much a new contract as if issued on a form carrying a different number than the original policy.'" Hoang v. Monterra Homes (Powderhorn) LLC, 129 P.3d 1028, 1035 (Colo. Ct. App. 2005), rev'd on other grounds, 149 P.3d 798 (Colo. 2007) (quoting Aronoff v. Carraher, 361 P.2d 354, 357 (Colo. 1961)); Am. Cas. Co. v. Glaskin, 805 F. Supp. 866, 872 (D. Colo. 1992) ("Each renewal of an insurance policy is a separate contract that may be enforced as written."). We note that this view of renewals is not uniform in all states. See Pierce v. Allstate Ins. Co., 848 P.2d 1197, 1200 (Or. 1993) ("The statutory scheme also makes clear that the renewal of a motor vehicle liability policy for an additional period does not constitute the issuance of a new policy."). Colorado courts, however, have treated renewed policies as new contracts before, and after, the 1992 amendment to § 10-4-710(2)(a). Because the Colorado legislature is presumed to be familiar with existing case law, we are asked to infer that the legislature intended to include "renewed policies" within

22

its reference to "issued policies." Shelter Mut. Ins. Co. v. Thompson, 852 P.2d 459, 464 n.5 (Colo. 1993) ("Because the legislature is presumed familiar with existing case law, this precedent is deemed approved."). Mr. Persichitte concludes that § 10-4-710(2)(a) applied to policies issued or renewed after July 1, 1992.

Additionally, Mr. Persichitte argues that other Colorado statutes explicitly treat an insurer's obligations under a renewed policy differently. Mr. Persichitte cites former § 10-4-706(4) for the statement, "After a named insured selects a policy with desired [PIP] coverage, an insurer shall not be under any further obligation to notify such policyholder in any renewal or replacement policy of the availability of a basic [PIP] policy or of any alternative [PIP] coverage." Similarly, Mr. Persichitte highlights language in § 10-4-601(3), defining "renewal policy" to be "the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued . . . ."

While both of Mr. Persichitte's arguments have some appeal, § 10-4-710(2)(a) is unambiguous and its plain meaning must control. It is clear that the legislature was aware that under the CAARA the issuance of a policy is treated differently from the renewal of a policy. By citing other Colorado statutes, Mr. Persichitte underscores that the Colorado legislature was aware of this distinction. Because the legislature distinguished between the issuing and renewing of policies in the CAARA, we cannot ignore the clear language of the statute by

23

applying case law interpretations of other statutes. Accordingly, the legislature chose to apply § 10-4-710(2)(a) "to policies issued on and after July 1, 1992" and not to policies renewed after that date. American Family issued the policy that covered Mr. Persichitte in 1987. Although the policy was renewed after 1992, § 10-4-710(2)(a) did not apply to this renewed policy.

As noted by the district court, the same analysis applies to Mr. Reffel's claims. American Family first issued Mr. Reffel's policy in November 1984, before the applicability of the 1992 amendment to the CAARA. Because we conclude that § 10-4-710(2)(a) does not apply to Mr. Reffel's claims, we need not consider Mr. Reffel's arguments concerning the accrual date for the statute of limitations and equitable tolling.

**B.    The Reformation Date in the February 13, 2007 Order of Decision**

On February 13, 2007, the district court granted in part and denied in part Mr. Whitehead's Motion to Increase Punitive Damage Award and Enter Judgment. The district court determined the date of reformation of Mr. Whitehead's insurance policy to be the date of the order. Consequently, the district court denied Mr. Whitehead's requests for interest and statutorily-trebled damages.

Mr. Whitehead appeals the district court's determination that the reformation date should be the date of the order. First, Mr. Whitehead argues that the district court's weighing of whether this case resembled other reformation

24

cases was incorrect. Second, Mr. Whitehead argues that the selection of a reformation date after the inception of the policy was contrary to Colorado law. Third, Mr. Whitehead argues that the district court's analysis did not address factors this court has stated are relevant to establishing a reformation date. Fourth, Mr. Whitehead argues that the district court improperly refused to follow the jury's finding that American Family acted unreasonably and in bad faith. Finally, Mr. Whitehead suggests that at the latest, the reformation date should be when American Family knew that no compliant offer was made.

1.      Standard of Review

We have recognized that the selection of a reformation date is an equitable decision, based on the particular circumstances of each case. Clark v. State Farm Mut. Auto. Ins. Co., 433 F.3d 703, 711 (10th Cir. 2005) ("Clark II"). As a result, we review for an abuse of discretion. Id. "'A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling.'" Id. (quoting Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002)). We review the district court's underlying factual findings for clear error, and review legal determinations de novo. Id. We "will not disturb the district court's selection of an effective reformation date unless [we have] a definite and firm conviction that the [district] court has made a clear error in judgment or exceeded the bounds of permissible choices in the circumstances." Clark II, 433 F.3d at 713 (quotation

25

omitted).

2.      Analysis

In Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1243–44 (10th Cir. 2003) ("Clark I"), we identified a nonexhaustive list of factors to consider when a court exercises its equitable power. Central to these factors is whether any previous, controlling ruling should have guided the parties in their practices related to the policy at issue. For example, in Clark I, we found that reformation of the policy in that case was necessary to include extended PIP benefits that covered pedestrians. Id. at 1242. In making this finding, we relied on the Colorado Court of Appeals decision in Brennan v. Farmers Alliance Mut. Ins. Co., 961 P.2d 550 (1998), which also reformed a policy to include PIP benefits covering pedestrians. To determine the effective reformation date, we analyzed the retroactive and prospective impact of the Brennan decision. Clark I, 319 F.3d at 1243 n.6. The factors key to our analysis were:

> (1) the degree to which reformation from a particular date would upset past practices on which the parties may have relied and whether [defendant] anticipated the rule in Brennan; (2) how reformation from a particular effective date would further or retard the purpose of the rule in Brennan; and (3) the degree of injustice or hardship reformation from a particular effective date would cause the parties.

Id. at 1243. We noted that "[r]elevant evidence might include . . . whether [defendant] anticipated the Brennan decision, compiled information of Brennan's effect on claims processing, relied on the interpretation of CAARA rejected in

26

Brennan, or had the ability to notify or considered notification of insureds and third-party beneficiaries about the Brennan decision." Id. at 1244. Ultimately, we approved of the district court's selection of the date of its order as the reformation date, noting "'[t]he fact that the insured may be entitled to obtain a reformation of the policy does not impose any obligation upon the insurer to conform to such 'reformed' policy before a court has made such reformation.'" Clark II, 433 F.3d at 713 (quoting Clark I, 319 F.3d at 1244).

This case does not involve the same substantive claims as those present in Clark I and Brennan. The basis of Mr. Whitehead's claims was that American Family's actions were insufficient to offer enhanced PIP benefits in compliance with § 10-4-710. As the district court noted, and Mr. Whitehead does not challenge, "[n]o court had previously analyzed or defined the parameters of whether or when an offer is reasonably calculated to allow a purchaser an opportunity to make an informed decision." App. at 1103.

Mr. Whitehead, however, contends that American Family should have known that its offer was insufficient under any standard and should have anticipated the "informed decision" standard. The "informed decision" standard is adopted from Allstate Ins. Co. v. Parfrey, 830 P.2d 905 (Colo. 1992) (discussing the sufficiency of an offer under a different statute than the CAARA). After the trial in this case, the Colorado Court of Appeals in Munger v. Farmers Ins. Exch., 174 P.3d 832 (2007), applied Parfrey to the analysis of offers of

27

enhanced PIP coverage under § 10-4-710.  The Munger court noted that there was a split among "the [f]ederal courts in Colorado" on the applicability of Parfrey to such offers.  Id. at 834.  As a result, we disagree with the notion that American Family should have anticipated the application of Parfrey.

Without a prior controlling case, such as Brennan, we adapt the Clark I factors to establish a reformation date.  When we omit any reference to Brennan, the following factors remain: (1) the degree to which reformation from a particular date would upset past practices on which the parties may have relied; and (2) the degree of injustice or hardship reformation from a particular effective date would cause the parties.  Both of these factors relate to whether American Family should have anticipated that it would have to pay the enhanced PIP benefits.  Whether the insurer should have anticipated its obligation to pay the benefits at issue is the analysis the Brennan court applied in its determination of a reformation date when no controlling case existed.  Brennan, 961 P.2d at 556.

While the district court did not explicitly consider or adjust the Clark I factors, the court compared the present facts to those in Brennan and examined whether American Family should have anticipated its obligation to pay enhanced PIP benefits.  There is no indication that the district court erred in its judgment or exceeded the bounds of permissible choices in these circumstances.  Accordingly, we will not disturb the district court's selection of the date of the February 13, 2007 order as the reformation date.

28

This resolves Mr. Whitehead's arguments that relate to what factors the district court should have considered when selecting the reformation date. Mr. Whitehead's remaining arguments do not affect the above analysis. Mr. Whitehead's contention that the district court improperly weighed the resemblance of this case to other reformation cases does not address the district court's selection of a reformation date. Whether reformation is appropriate is distinct from when reformation should occur. The district court found reformation to be appropriate. App. at 1102 ("[A]lthough the instant case is factually distinguishable, it is conceptually analogous to the other reformation cases discussed above.").

Mr. Whitehead's assertion that Colorado law requires the reformation date to be the date the policy was created is not compelling. Repeatedly, we have considered the selection of a reformation date to be an equitable decision that requires consideration of the "particular circumstances of each case." Clark II, 433 F.3d at 712 (quoting Clark I, 319 F.3d at 1243); see also Brennan v. Farmers Alliance Mut. Ins. Co., 961 P.2d 550, 556 (Colo. Ct. App. 1998) ("The remedy of reformation is an equitable one, . . . and the trial court's formulation of such remedy is within its discretion."). This requirement of individualized analysis contradicts Mr. Whitehead's assertion that Colorado law mandates a specific reformation date. May, 263 F. App'x at 681–82 (similarly rejecting the same argument).

29

Because we conclude the district court did not err in its selection of February 13, 2007 as the reformation date of Mr. Whitehead's policy, the district court did not err in its denial of interest and statutorily-trebled damages.

**C.  Attorney Fees**

1.  The March 7, 2007 Motion for Attorney Fees

On February 13, 2007, the district court issued an order addressing several post-trial matters.  Relevantly, the district court: (1) granted Mr. Whitehead's motion to enter judgment; (2) denied Mr. Whitehead's motion for attorney fees "in its present form"; and (3) noted "[s]ubject to [the district] court's determination, Plaintiff Whitehead may have his reasonable attorney fees upon filing an application to this court in accordance with Federal Rule of Civil Procedure 54(d)(2) and United States District Court of the District of Colorado Local Rule 54.3." App. at 77–78.

In response to this order, Mr. Whitehead and American Family filed a joint motion for extension of time on February 23, 2007.  This motion assumed that the February 13, 2007 order constituted entry of judgment, triggering the deadline for several possible motions.  Both parties requested extensions of these deadlines. Mr. Whitehead requested the deadline for a motion for attorney fees be moved from February 27, 2007 to March 6, 2007.  On February 26, 2007, the district court granted this motion by text entry.

The next day—February 27, 2007—the district court entered a final

30

judgment order.  This document again ordered that the motion to enter judgment is granted and commented that Mr. Whitehead will be awarded reasonable attorney fees subject to the court's review and ruling on the motion submitted.

On March 6, 2007, Mr. Whitehead's counsel filed a declaration with several attachments and exhibits.  On March 7, 2007, Mr. Whitehead's counsel filed a motion for attorney fees.

The district court denied the motion for attorney fees for several reasons.  First, the court found the motion was untimely and that no excusable neglect was shown that would justify its untimeliness.  Second, the court noted that the local rules required the motion to be supported by an affidavit, but Mr. Whitehead's counsel submitted a declaration.  Third, the court found counsel's hourly rates to be inconsistent.  Fourth, the court found counsel's computations to be inconsistent.  As a result, the court struck the exhibit detailing the services provided and time allotted to those services.  Lastly, the court noted that the *motion* did not contain the required description of services, time, rate, and total amount claimed.  That information appeared in the exhibit that was struck.

Mr. Whitehead challenges several aspects of the district court's denial of his motion for attorney fees.  First, Mr. Whitehead contends that his motion was timely.  Second, Mr. Whitehead contends that the form of his motion did not justify its denial.

a.      Standard of Review

31

Generally, we review for abuse of discretion a district court's ruling on a motion for attorney fees under Rule 54(d)(2). Quigley v. Rosenthal, 427 F.3d 1232, 1236 (10th Cir. 2005) (citing Rodriguez v. Whiting Farms, Inc., 360 F.3d 1180, 1190 (10th Cir. 2004)). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002). To the extent the appeal implicates the district court's interpretation of the Federal Rules of Civil Procedure, we apply a de novo standard of review. Id. (citing Esposito v. United States, 368 F.3d 1271, 1275 (10th Cir. 2004), for the statement "We review de novo the district court's interpretation of the Federal Rules of Civil Procedure.").

b.     Analysis

While we are unconvinced by the district court's reliance upon the time constraints of Rule 54(d)(2)(B) and the distinctions between an affidavit and a declaration—See 28 U.S.C. § 1746—these errors were harmless. The district court also disputed several aspects related to the calculation of Mr. Whitehead's attorney fees. Citing discrepancies between the "true and correct" summary of attorney fees and the detailed accounting of the services, time, and pay rate per attorney, the district court struck the exhibit. On appeal, Mr. Whitehead asserts that "the only discrepancy was that some of the information was contained in an attachment instead of in the body of the motion." Aplt. Br. at 13. This assertion

32

is incorrect.

The summary of attorney fees and the detailed time entries contained several contradictions. As the district court noted, Julie Cliff summarizes her hourly rate as $225, claims 192.75 hours of work—$225/hour * 192.75 hours = $43,368.75—but requests $40,906.25. Calculating the fee based on the time entries gives a sum of $42,368.75.[4] Regarding the work of paralegal Megan Waples, the summary lists that she performed 39.50 hours of work at an hourly rate of $95; the detailed time entries list only 8 hours of work at an hourly rate of $175. We agree with the district court's description that these are "glaring errors." App. at 231.

Although not discussed by the district court, the CAARA provision that applies to the award of attorney fees adds increased significance to these errors. "In no event shall the . . . court enter an award of attorney fees which is in excess of actual reasonable attorney fees." Colo. Rev. Stat. § 10-4-708 (1.7)(c)(III). The plain language of this statute mandates that the court determine the actual, or "existing in fact," reasonable attorney fees. Brody v. State Farm Mut. Auto. Ins. Co., 194 P.3d 459, 461 (Colo. Ct. App. 2008). Mr. Whitehead's submissions made it impossible to determine his actual attorney fees. Accordingly, the district court correctly denied the request for attorney fees.

---

[4] The district court calculated this amount to be $42,268.75. App. at 231.

33

2.      Mr. Whitehead's Motion to Reconsider the Denial of Attorney Fees

After the district court denied Mr. Whitehead's motion for attorney fees, Mr. Whitehead filed a motion to reconsider and a revised motion for attorney fees. The district court denied both. Regarding the motion to reconsider, the district court characterized it as "in large part, a list of excuses why [the] initial motion for attorney fees was not filed in a timely manner." App. at 320. Noting that the motion to reconsider did not address the remainder of the court's prior ruling, the district court restated and reapplied the alternative bases for dismissing the initial motion. As a result, the district court did not find inadvertent error or excusable neglect. Regarding the revised motion for attorney fees, the district court denied the motion as untimely. Mr. Whitehead appeals the denial of the motion for reconsideration.

a.      Standard for Review

We review for abuse of discretion the district court's denial of a motion for reconsideration. Elephant Butte Irrigation Dist. of N.M. v. U.S. Dep't of Interior, 538 F.3d 1299, 1301 (10th Cir. 2008) (citing Geddes v. United Staffing Alliance Employee Med. Plan, 469 F.3d 919, 928 (10th Cir. 2006)). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1299 (10th Cir. 2006).

34

b.    Analysis

Mr. Whitehead filed his motion for reconsideration under Federal Rule of Civil Procedure 60(b).  In pertinent part, this rule allows a court to relieve a party from an order for "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Such relief is "extraordinary and may be granted only in exceptional circumstances."  Beugler v. Burlington N. & Santa Fe Ry. Co., 490 F.3d 1224, 1229 (10th Cir. 2007) (quotation omitted).

Mr. Whitehead argues that the district court did not properly apply Rule 60(b) because the court did not consider "key facts."  The facts Mr. Whitehead cites relate to the timing of the filing of the initial motion for attorney fees.  As stated, the district court wrongly determined that the initial motion was untimely.  On the other hand, at least one of the district court's alternative bases— discrepancies between the summary of attorney fees and the detailed time entries—was a valid justification for denying the initial motion.  None of Mr. Whitehead's arguments on appeal, or in his motion for reconsideration, addresses those concerns.  We conclude that the district court did not abuse its discretion in denying the motion to reconsider.

III

We reverse the district court's dismissal of Mr. Whitehead's bad faith breach of contract claim based on the May 2001 policy.  We remand that claim to the district court for further proceedings.  All remaining issues are affirmed.