**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY C. NORTH, individually and in
his capacity as the Executor of the Estate of
Mary North, deceased,

        Plaintiff – Appellant,

v.

ROBERT L. CUMMINGS; JUDY A.
CUMMINGS, trustees or their successors
in trust under the Robert L. and Judy A.
Cummings Living Trust dated July 14,
2002; ROBERT L. AND JUDY A.
CUMMINGS LIVING TRUST DATED
July 14, 2002,

        Defendants – Appellees.

No. 08-8054
(D. Wyo.)
(D. Ct. No. 2:06-CV-00174-WFD)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **BRORBY**, and **GORSUCH**, Circuit Judges.

Mary L. North, the wife of Appellant, Larry C. North, was killed when the vehicle

in which she and Larry were traveling was struck head-on by an SUV driven by Robert

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

L. Cummings.  Larry brought an action against Cummings asserting claims for personal injury, negligent infliction of emotional distress and wrongful death.  A jury found Cummings was negligent and awarded Larry $77,734 on his personal injury claim and $15,000 on his negligent infliction of emotional distress claim.  On the wrongful death claim, the jury awarded $5,000 each to Larry, Mary's two children and each of Mary's parents.  Though acknowledging "the Jury award was surprisingly low," the trial court denied Larry's motion for a new trial.  (Appellant's App., Vol. II at 439.)  The court granted Cummings' motion for credit on the judgment pursuant to Wyo. Stat. Ann. § 1-1-108, concluding Cummings was entitled to a credit for the amount he paid Larry prior to trial to compensate him for property damage.  Larry appeals from these decisions; we affirm.

## I.     BACKGROUND

Mary and Larry married in 1997.[1]  Mary had two children from a previous marriage.  On July 6, 2004, Mary and Larry were traveling in their motor home in northeastern Wyoming when they were struck head-on by Robert Cummings, who was attempting to pass a tractor-trailer in the left lane of a two-lane highway.  Mary was unresponsive following the accident.  Larry sustained serious injuries in the accident and was trapped inside the motor home with Mary for approximately two hours.  Mary was 53-years-old at the time of her death.

---

[1] This was Mary's third marriage.

Larry filed a complaint against Cummings[2] on behalf of himself, Mary's parents, Mary's children and as the personal representative of Mary's estate. During the five-day trial, Larry presented evidence regarding the expenses he incurred as a result of the accident. These expenses totaled $59,168.40 and included charges for ambulance transportation, hospitalization, clinic visits, pharmaceuticals and lost earnings.

Larry also presented evidence regarding Mary's contribution to the household and the loss he and Mary's parents and children experienced after her death. Prior to her death, Mary worked full-time earning $32,000 per year. In addition, she did all the housework, with the exception of washing dishes, and was responsible for paying the bills. Mary and Larry frequently hosted family gatherings at their house. Larry testified she was the "glue that kept [the family] together." (Appellant's App., Vol. I at 73.) Mary's elderly parents depended upon Mary and she visited them almost daily. Mary also had a close relationship with her children.

Mary had intended to work full-time for seven more years at the time of her death. Her employer projected her salary and benefits for seven years would total $279,695.72. Economist Ralph J. Brown, Ph.D., testified the economic loss resulting from Mary's death, including loss of earnings, earning capacity, fringe benefits and home services, minus personal consumption, was between $322,174 and $394,860.

---

[2] The complaint named Robert L. Cummings individually as a defendant. He also named Cummings, with his wife, Judy A. Cummings, as trustees of the Robert L. and Judy A. Cummings Living Trust Dated July 14, 2002, and the Trust itself as defendants. The jury found Robert was acting in furtherance of the business of the trust at the time of the accident. For the sake of simplicity, we refer to the Defendants collectively as "Cummings."

Larry's economic loss claim was contested. Brown assumed Mary consumed 18-20% of her and Larry's gross income but did not determine her actual consumption rate. Brown admitted when a husband earns more than his wife, the wife may consume all of her income and part of her husband's income as well. Larry testified he did not know how much of Mary's income she used for her individual expenses. Brown also included a substantial figure for loss of household services in his calculation though he admitted Mary was never paid for her household services and after her death, Larry did not pay anyone to perform household services. Moreover, Brown's calculations did not take account of the fact that after Mary's death, Larry received Mary's retirement benefit of $950 per month and received discounted health insurance.

The parties stipulated as to the amount of Mary's funeral expenses ($9,067.18). The funeral bill was admitted into evidence and included a receipt to Larry. Prior to trial, Cummings voluntarily paid Larry $11,455 for damage to the motor home and its contents.[3] Larry made a claim for the same property damage at trial. The written stipulation of the value of the motor home and its contents indicated the amount was to be divided equally between Mary's estate and Larry.

Mary's parents testified compensation was not their primary motive for bringing suit. Her father was asked whether "a money award is going to help solve the absence of Mary in [his] life." (Appellant's App., Vol. II at 281.) He answered: "No, it won't. Money won't solve [it] at all. That's for sure." (*Id.*) Mary's mother was asked whether

---

[3] The jury was not aware Larry received any payment prior to trial.

4

she "want[ed] someone to pay for [her] daughter's death." (*Id.* at 272.) She answered: "I think [Cummings] should be made to suffer the way we have suffered in some way. He didn't have to go to prison, and justice should be served." (*Id.*) Cummings' wife testified her husband "has suffered so much. He has never been able to talk about [the accident] without breaking down." (Appellees' Supp. App. at 17.)

The jury was instructed:

## JURY INSTRUCTION NO. 16

If you decide for Plaintiff, Larry North, on the question of liability for his personal injuries, you must fix the amount of money that will reasonably and fairly compensate Plaintiff for those elements of damage proved by the evidence, taking into consideration the nature, extent, and duration of the injury.

The claimed elements of damage are:

(a)     The pain, suffering, and emotional distress experienced as a result of the injuries and those reasonably probable to be experienced in the future;

(b)     Disability;

(c)     Loss of enjoyment of life and any loss of enjoyment of life reasonably probable to be experienced in the future. The award for this specific elements should not duplicate the award given or any other element of damage;

(d)     Loss of earnings and Earning Capacity. The value of time, earnings, profits, salaries lost to this date, and the present cash value of any earnings reasonably probable to be lost in the future, taking into consideration any lost earning capacity of the plaintiff; [and]

(e)     Medical expenses. The reasonable expense of necessary medical care, treatment, and services received to date and any medical expense reasonably probable to be incurred in the future[.]

Whether any of these elements have been proved is for you to

5

determine.

## **JURY INSTRUCTION NO. 17**

There is no formula the Court can give you for the determination of damages for pain and suffering, emotional distress, loss of enjoyment of life and disability or any future damages . . . . The amount awarded, if any, rests within your sound discretion and is for you to determine . . . .

\* \* \*

## **JURY INSTRUCTION NO. 20**

If you find for Plaintiff, Larry North, on the question of liability, you shall determine the amount of damages, if any, sustained by each claimant, taking into account the nature, extent, and duration of each of the following:

(a)     The amount each such claimant has failed or will fail to receive from the decedent's earnings . . . ;

(b)     The loss of probable future companionship, society and comfort; and

(c)     Any other monetary or pecuniary loss sustained and proved by any of the claimants resulting from the death of the decedent, including any funeral expenses and other proper charges.

There is no formula that the court can give you for the determination of damages for loss of probable future companionship, society and comfort. It is not necessary that any witness shall have expressed any opinion as to the dollar amount of damages. Your award, if any, shall be such sum as will fairly and adequately compensate the claimants. The amount awarded, if any, rests within your sound discretion, and it is up to you to determine . . . .

\* \* \*

6

## JURY INSTRUCTION NO. 23

You are instructed that the claimants in this action may not recover damages for mental anguish or grief suffered as a result of the death of Mary North.[4]

(Appellant's App., Vol. II at 386-93.)

The jury returned a verdict in favor of Larry. It awarded $77,734 to Larry on his personal injury claim and $15,000 on his negligent infliction of emotional distress claim. On Larry's wrongful death claim, the jury awarded $5,000 each to Larry, Mary's two children and each of Mary's parents.

Larry did not object to the jury verdict and final judgment was entered on April 9, 2008. On April 16, 2008, Cummings filed a motion for credit on the judgment seeking credit in the amount of $11,455, which was the amount he paid to Larry prior to trial. On April 22, 2008, Larry filed a motion for a new trial seeking a new trial on the issue of wrongful death damages, or, in the alternative, a new trial on all issues. The court held a hearing on both motions. Larry argued the jury award was "grossly and manifestly inadequate" and "the jury neglected to take into consideration . . . the evidence as to damages." (*Id.* at 413, 415.) The court denied Larry's motion for a new trial and granted Cummings' motion for credit on the judgment.

## II.    DISCUSSION

Larry contends the district court erred in denying his motion for a new trial and in granting Cummings' motion for credit on the judgment pursuant to Wyo. Stat. Ann. § 1-

---

[4] Larry's claim for negligent infliction of emotional distress was an exception to this instruction; he could recover for mental anguish or grief on that claim.

1-108. "We review a district court's disposition of a motion for . . . new trial on damages for a manifest abuse of discretion." *Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1143 (10th Cir. 2002) (quotations omitted). "We review the district court's interpretation of [a state] statute[ ] de novo." *Breaux v. Am. Family Mut. Ins. Co.*, 554 F.3d 854, 863 (10th Cir. 2009). Because this case is grounded on diversity jurisdiction, the substantive law of Wyoming governs. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

A.     Motion for a New Trial

"[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Telecor Commc'ns, Inc.*, 305 F.3d at 1143 (quotations omitted). "[E]ven where a persuasive explanation of the jury's damages award indicates an award contrary to law, the possibility of a proper explanation, however slight the chance, will suffice to sustain the damages award." *Id.* (quotations omitted); *see also Cont'l Cas. Co. v. Sw. Bell Tel. Co.*, 860 F.2d 970, 972-73 (10th Cir. 1988) ("The amount of damages awarded by the jury can be supported by any competent evidence tending to sustain it, and our appellate function is completed when we are convinced that an evidentiary basis in the record supports the jury's verdict.") (quotations omitted).

Larry does not claim there is direct evidence that passion, prejudice, corruption or other improper cause invaded the trial. Instead, he contends the award is so inadequate as to shock the judicial conscience because: (1) the jury did not award funeral expenses or

8

stipulated property damages; (2) the jury did not compensate Larry for the loss of Mary's earnings and services; and (3) the jury awarded only $5,000 to each of the wrongful death claimants. The district court rejected each of these arguments.[5] It explained: "The Court believes that the jury award was surprisingly low, but Plaintiffs have presented no objective evidence to demonstrate that the verdict was inadequate." (Appellant's App., Vol. II at 439.) We perceive no "manifest abuse of discretion." *Telecor Commc'ns, Inc.*, 305 F.3d at 1143 (quotations omitted).

As to Larry's first argument, the jury could have included the funeral expenses and stipulated property damages in Larry's personal injury award.[6] It awarded $77,734 to Larry for personal injuries. Larry's medical treatment and lost earnings totaled $59,168.40. If the jury added the funeral expenses ($9,067.18) and stipulated property damages ($11,455) to this amount, the total would be $79,690.58, which differs from the amount actually awarded by less than $2,000.

Larry contends the jury could not have included funeral expenses in his personal

---

[5] The court also determined Larry waived his right to challenge any alleged inconsistency in the verdict. On appeal, Larry is only challenging the adequacy of the verdict; he does not claim the verdict is inconsistent. Larry cannot challenge the consistency of the verdict because, as the district court correctly found, this was a general verdict and Larry waived his right to object to any alleged inconsistency by failing to object to the verdict before the jury was discharged. *See* Fed. R. Civ. P. 49 (distinguishing between general and special verdicts); *Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1141 (10th Cir. 2005) ("[A] party waives the right to object to inconsistencies in a general verdict . . . if it does not object . . . before the jury is discharged unless the verdict is inconsistent on its face . . . .") (quotations omitted).

[6] Alternatively, the jury could have found these amounts were non-compensable. A jury is not bound to include any particular category of damages in its award.

9

injury award because the court instructed the jury that funeral expenses were to be included in wrongful death damages. While "[w]e presume the jury follows its instructions," *United States v. Rogers*, 556 F.3d 1130, 1141 (10th Cir.), *cert. denied*, 129 S. Ct. 2783 (2009), our task in reviewing the adequacy of a damages award is to determine only whether there is a "possibility of a proper explanation." *Telecor Commc'ns, Inc.*, 305 F.3d at 1143. It is surely possible the jury included the funeral expenses and stipulated property damages in Larry's personal injury award. Notably, the funeral expenses and stipulated property damages were included along with elements of Larry's personal injury claim on a list of expenses that the jury saw.

As to Larry's second argument, the jury could have concluded Larry was not entitled to an award for the loss of Mary's earnings and services despite Brown's expert testimony to the contrary. The jury was properly instructed it was "not bound to accept an expert's opinion as conclusive" and could "disregard an expert's opinion if [it found] it to be unreasonable or not adequately supported." (Appellant's App., Vol. II at 384.)

We are similarly unpersuaded by Larry's third argument. He claims "[a]n award of $5,000.00 each to [himself], [Mary's] parents and her children is definitely grossly and manifestly inadequate." (Appellant's Opening Br. at 12.) He contends: "[F]or whatever reason, the jury simply ignored the evidence in this case." (*Id*. at 16.) In support of this argument, he relies principally on *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983). Rodriguez and three of his seven children were killed when the automobile in which they were riding was struck by Ager's semi-tractor-trailer. Rodriguez's wife obtained a jury award of approximately $65,000 against the owner and driver of the truck for the death of

10

her husband. She recovered only the funeral expenses for the death of her children even though she "was shown to be very close to her children." *Id.* at 1236. The primary issue on appeal was whether the district court erred in not ruling the lessee of the truck was legally responsible for the injuries. After resolving this issue, we "consider[ed] whether the jury was correct in its finding that [Rodriguez's wife] was only entitled to funeral expenses as damages for the death of her three children." *Id*. We stated: "A trial court's refusal to grant a new trial on the issue of inadequate damages can be reversed and vacated whereas here the jury seemingly disregarded the elements of wrongful death." *Id.* at 1237. Without any significant discussion, we concluded the damages awarded for the death of the children were "legally inadequate." *Id.*

*Rodriguez* is easily distinguished from the present case. There, the jury's award of *no* damages for loss of companionship could "be attributed only to the jury disregarding the evidence altogether . . . ." *Id.* Here, however, Larry and the other wrongful death claimants each received $5,000. This award, even if small, does not give rise to the same inference that the jury abdicated its duty. Moreover, there are numerous cases which hold a damages award is not inadequate as a matter of law simply because it is lower than might be expected.

In *Crane v. Mekelburg*, the plaintiffs brought an action against the intoxicated driver of a vehicle which overturned, causing the death of the plaintiffs' son and brother. 728 F.2d 439 (10th Cir. 1984). The jury found the defendant was negligent and awarded approximately $3,500 to the decedent's estate and $10,000 each to the decedent's parents but awarded no damages to the decedent's four siblings. We affirmed the district court's

denial of plaintiffs' motion for new trial stating: "Even though this court might have awarded damages on a different plane, this is not the test as to whether the jury's verdict was in error . . . .  [W]e cannot just take a look at the small amount of a verdict and conclude that we must, as a matter of law, presume that bias and prejudice was present. Indeed the opposite is the practice." *Id.* at 443.

In *Black v. Hieb's Enterprises, Inc.*, we held an award of $55,000 for "facial lacerations and scarring, facial fractures, the loss of one eye, emotional harm, loss of employment and employment prospects, pain and suffering now and in the future, loss of marital opportunity and other damages" resulting from a product defect was "not so inadequate as to raise . . . an inference [of passion or prejudice on the part of the jury]." 805 F.2d 360, 362 (10th Cir. 1986) (quotations omitted).  We explained: "In this case, as in most cases, the only guide available upon review to test the properness of an award is a comparison of amount with injury." *Id.* (quotations omitted).  "It was the jury's function, as the trier of fact, to determine the amount of damages that would fairly compensate [the plaintiff], and the jury has wide discretion in making that determination." *Id.* at 362-63; *see also McPike v. Scheuerman*, 398 P.2d 71, 74 (Wyo. 1965) (parents of 14-year-old girl struck while in a marked crosswalk sought over $25,000 in damages from 15-year-old driver; jury awarded $3,500; court affirmed denial of motion for a new trial stating "[h]ad the jury given a larger amount . . . justice may have been better served, but this court is in no position to substitute its judgment for that of the jury and the trial court without a compelling reason, which is here lacking.").

Here, the jury was instructed: "The amount awarded, if any, rests within your

12

sound discretion . . . . Your award, if any, should be for what damages are reasonable and just." (Appellant's App., Vol. II at 390.) While justice may have been better served by a larger award, there is nothing in the record to suggest the district court abused its discretion in concluding a wrongful death award of $25,000 (divided amongst five claimants) is adequate as a matter of law. The jury could have found, consistent with the testimony of Mary's parents, that Larry brought this suit to make Cummings suffer and, as Cummings' wife testified, he had already suffered enough. *See, e.g., Woodbury v. Nichols*, 797 P.2d 556, 558 (Wyo. 1990) (rejecting plaintiffs' argument that damages award was inadequate where the jury found defendant 55% liable for decedent's death but awarded no damages because, *inter alia*, "each of the family members testified that money was not the object of the suit, but rather they had brought suit to put out message about . . . drinking and driving"; "[t]he jury, at least in part, may have taken the[se] [family members] at their word").

B.      Motion for Credit on the Judgment

The district court granted Cummings' motion for credit on the judgment pursuant to Wyo. Stat. Ann. § 1-1-108, which states in relevant part:

> No voluntary partial payment of a claim based on alleged liability for injury or property damage shall be construed as an admission of fault or liability, or as a waiver or release of claim by the person receiving payment . . . . After entry of judgment, any such payment ***shall be treated as a credit and deducted from the amount of the judgment***. If after partial voluntary payments are made it is determined by final judgment of a court of competent jurisdiction that the payor is liable for an amount less than the voluntary payments already made, the payor has no right of action for the recovery of amounts by which the voluntary payments exceed the final judgment. No voluntary partial payments shall be construed to reduce the amount of damages which may be pleaded and proved in a court

proceeding between the parties.

(Emphasis added).

According to the district court, this statute "provides that pre-trial voluntary payments will be deducted from the judgment if the payment was made on the basis of alleged liability for property damage. The statute does not consider whether the jury awards plaintiff relevant damages for a deduction to apply." (Appellant's App., Vol. II at 428.) Thus, the court held Cummings was entitled to credit for the amount he voluntarily paid prior to trial ($11,455) regardless of whether the jury actually included this amount in its award. Larry contends the court erred because it is clear the jury did not award the stipulated damages. He argues: "Inherent in the statutory scheme is the presumption that the Judgment actually includes such amounts against which a deduction could be made or credit given." (Appellant's Opening Br. at 20.)

As an initial matter, we note the jury could have included the stipulated damages in Larry's personal injury award. However, because the verdict was a general verdict, we do not know specifically which damages were or were not included. But that uncertainty would not have occurred had Larry requested a separate property damage line on the verdict form or sought clarification of the verdict before the jury was dismissed. By failing to do so, Larry waived the argument that the jury did not award the stipulated property damages. *See Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1468 (10th Cir. 1992) (stating that party's failure to object to verdict form or seek clarification of verdict bars that party from taking advantage of resulting ambiguity on appeal). Even assuming, *arguendo*, Larry did not waive the argument, our de novo review satisfies us that the

14

district court did not err in interpreting Wyo. Stat. Ann. § 1-1-108. *See Breaux*, 554 F.3d at 863.

The Wyoming Supreme Court has explained the procedure it uses in interpreting a Wyoming statute:

> We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Johnson v. City of Laramie*, 187 P.3d 355, 357 (Wyo. 2008) (quotations omitted). "[W]hether a statute is ambiguous is a matter of law to be determined by the court." *Chevron U.S.A., Inc. v. Dep't of Revenue*, 154 P.3d 331, 335 (Wyo. 2007) (quotations omitted). "A statute which is uncertain and susceptible of more than one meaning is ambiguous." *Haderlie v. Sondgeroth*, 866 P.2d 703, 711 (Wyo. 1993) (quotations omitted).

The Wyoming Supreme Court has not yet considered the question presented here. Our job is to predict how the Wyoming Supreme Court would rule. *See TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007) (a federal court applying state law where no controlling state decision exists "must attempt to predict what the state's highest court would do") (quotations omitted). It is unlikely the Wyoming Supreme Court would conclude § 1-1-108 is ambiguous. The statute provides: "After entry of judgment, any [voluntary partial] payment [of a property damage claim] shall be treated

15

as a credit and deducted from the amount of the judgment." Wyo. Stat. Ann. § 1-1-108. This language is not susceptible to more than one meaning. The word "shall" is mandatory, not discretionary. *See In re LePage,* 18 P.3d 1177, 1180 (Wyo. 2001) ("Where a statute uses the mandatory language 'shall,' a court must obey the statute as a court has no right to make the law contrary to what is prescribed by the legislature."). And the statue does not—either expressly or impliedly—make post-judgment credit conditional upon the partial payment being included in the judgment. While "a statute should not be construed . . . in a manner producing absurd results," *Haderlie*, 866 P.2d at 711, this reading does not render an absurd result.

The purpose of § 1-1-108 is to "provid[e] a means for a potentially liable defendant . . . to pay medical bills and other damages immediately after an injury and during recovery without the necessity of the injured party filing a legal action." *Id*.

> The statute is beneficial to an injured party who can receive partial payments of medical bills, lost earnings and other loss promptly without using his own funds, borrowing, or facing bankruptcy for large medical expense he is unable to pay. It is beneficial to the potentially liable party who can aid the injured person during recovery, act reasonably, maintain good relations with the injured person, and perhaps settle the claim, avoiding the substantial cost and expense of litigation and trial . . . . The statute then protects the party paying (payor) by providing a credit for all payments and prohibiting use of voluntary payment to establish liability. It protects the injured party in allowing litigation if settlement is not achieved.

*Id.* The purpose of the statute is in no way frustrated by our reading. Cummings elected to compensate Larry for his property damage before trial. Larry requested the jury include this property damage in his award. The jury may or may not have included it in

16

Larry's personal injury award.  In either case, Cummings is entitled to a credit on the judgment.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge